### Samuel Patterson *v.* W. W. Neuer, Appellant.

*Promise sufficient to toll statute of limitations—Act of* 1713.

To remove the bar of the statute of limitations, there must be a clear and definite acknowledgment of the debt and a specification of the amount due or a reference to something by which such amount can be definitely and certainly ascertained.

A claim for a percentage on the cost price of defendant's buildings for extra services in supervising their construction will not be taken out of the bar of the statute of limitation by the testimony of the claimant that " I went all over this work I had done for defendant where he owed me the bill " and told him that I had not been paid for it, and he thereupon promised to pay every cent, as this conversation fails to specify the amount of the debt or to furnish any basis on which the amount could be definitely and certainly ascertained.

Argued April 9, 1894. Appeal, No. 27, Jan. T., 1894, by defendant, from judgment of C. P. Luzerne Co., Jan. T., 1884, No. 410, on verdict for plaintiff. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit for services. Before RICE, P. J.

Suit was brought January 9, 1884. The pleas were non assumpsit and the statute of limitations.

The claim was on an alleged oral contract made in 1871 for supervision of the construction of defendant's buildings at five per cent of their cost, and also $200 for an occasional inspection of the work on another building. These services were in addition to days' wages which were paid. Plaintiff testified

that defendant's house cost about $25,000, the barn about $3,000, and the coachman's house about $1,000. Defendant testified that the coachman's house cost only about $400. The evidence of a promise to pay the debt, relied on to toll the statute, is stated in the opinion of the court below discharging a rule for a new trial. The evidence further showed that the credit which plaintiff testified defendant promised to make was never made.

The opinion of the court below was as follows :

"It is contended that there was no evidence to go to the jury that the defendant acknowledged the debt and promised to pay it within six years prior to the bringing of suit. The plaintiff testified that he made several demands for payment, and that the defendant put him off. On one occasion the following conversation took place : ' He says, "Patterson, I don't see why on earth you bother me, you have plenty of money." I says, "You owe it to me." He says, "Yes I know it and will pay it, but you might give a man a chance to pay it—give him time." ' On another occasion the plaintiff testified, ' I asked him when he would pay. He said he did not really know. I told him I would like to have it. He says, "I will pay you all right, but I cannot do it just now, because I haven't got it." ' The plaintiff testified to another conversation in Bradford, as follows : ' He said, "Patterson, I will pay you every cent. I wish I had come here a little sooner; I could make lots of money. I will make lots of money before I leave, and I will pay every dollar; you need not be afraid." ' The acknowledgment to remove the bar of the statute must be clear, distinct and unequivocal, not only as to the existence of a debt, but of the particular debt to which it is sought to be applied. The cases cited by the defendant's counsel clearly show that the foregoing conversations are insufficient, because the particular debt was not identified in any manner.

"But we are not convinced that the conversations which the plaintiff testified took place in 1881 or 1882 are subject to the same objection. We quote from his testimony : ' Well, I met him here ; he stopped me on the street, and asked me if I had got any money. I told him I had. Well, I told him that I had, and he told me he would like to have some money for to send out to his son in Tucson, Arizona,—on the lot that I had

bought from him. I says, " My God, what's the matter with
you? You want money! I don't intend to pay you another
damn cent. . . . I won't pay you any more money until you
pay me. You have humbugged me long enough, and I won't
stand it any longer." " Well," says he, " you need not be a bit
afraid of me ; I will pay you everything I owe you." I says,
" it don't make any difference," I told him—went all over the
work I had done, and told him how hard I had worked ; went
all over this work I had done for him where he owed me the bill.
Says I, " I worked hard and up through the mud when there
was no streets up to your house ; when I couldn't get a man I
took off my coat and did the work myself." I says, " You never
give me a damn cent." He told me, he says, " You need not be
a bit afraid; I will pay you every cent, you need not be a bit
afraid." I says, " I don't care, I will not pay you anything,"
and I went off.'

   " On the following day the plaintiff concluded to pay some-
thing on the contract. He testified : 'I had the money with
me and I counted it and give it to him, and it was put on the
contract. It was in the neighborhood of $300. I told him I
ought not to do it, but I hoped he would make something out
of it and would pay me. He says, no fear of that, he would pay
me every cent I owe you, and I repeated the same thing I did over
here ; I told him about the hard work—Q. How much was
claimed to be due on the balance of the lot? A. There was
$250 still due. Q. What did he say in reference to that bal-
ance? A. He said he would have the deed made, and he would
give me credit for the $250 on that lot. Q. He would credit
you with $250 on what he owed you? A. Yes, sir. And said
he would pay the rest just as soon as ever he could.'

   " The defendant flatly denies having had any such conver-
sations, but this conflict has been settled by the verdict in favor
of the plaintiff, and, whatever may be the truth, we must as-
sume for present purposes that the defendant made the ac-
knowledgments and promises referred to. Assuming this
testimony to be true, it proves an express and unequivocal
promise to pay a debt which the defendant owed to the plain-
tiff for his services in the very matter for which the suit was
brought. There is no room for inference or even speculation
that the conversations related to some other debt, and the na-

ture and extent of the services out of which the debt arose were directly before the minds of the parties. Furthermore, the plaintiff's declaration that he had been paid nothing, followed by the defendant's promise to pay every cent amounted to an acknowledgment that the whole claim was unpaid. But it is argued that the testimony is insufficient because the amount of the debt was not stated, and several cases are cited in support of this proposition. We think, however, after a careful study of these and other cases of the same class, that they do not go to the extent claimed for them. The case of Huff v. Richardson, 19 Pa. 388, was a suit upon a book account. The evidence was that the parties agreed to meet at a certain time when the books would be present, and if the defendant could satisfy the plaintiff that he was entitled to certain indefinite credits which he claimed, they were to be allowed, and they were then to settle off the books, and the defendant was to pay the plaintiff. Regarding this evidence the court pertinently remarked : ' To pay him what? The book account as it stood? There is not a word to justify such an inference. If he was to pay him the balance on settlement, that is unascertained and is the claim in suit.' Suter v. Sheeler, 22 Pa. 308, was an action to recover wages for fourteen years' labor, the acknowledgment and new promise relied on were indefinite, not only as to the amount of the debt, but also as to the length of service, and the monthly wages, and, as pointed out in the opinion of the court, there were qualifying circumstances affirmatively shown which made it uncertain whether the acknowledgment related to the whole period or only part of it. The court conceded that but for these qualifying circumstances, according to some of the adjudged cases, the evidence might be held to be a waiver of the statute as to the contract of hiring declared on. In Shitler v. Bremer, 23 Pa. 413, there was a naked admission of indebtedness without in any way indicating the amount or nature of the debt or from what it arose, and a promise to pay something without any reference to the sum to be paid, or what it was to be paid for. The point decided in Burr v. Burr, 26 Pa. 284, was that the acknowledgment relied on to remove the bar of the statute was not plainly referable to the note in suit. The note was not present, nor was it referred to by date, amount, or in any manner whatever.

The cases of Landis v. Roth, 109 Pa. 621; Hobaugh v. Murphy, 114 Pa. 358; Mayfarth's Appeal, 1 Cent. R. 398, were decided upon the same ground. These cases are not authority for a proposition that a new promise to pay a note barred by the statute of limitations must specify the amount. A note, at least, may be identified otherwise, and when so identified that there is no doubt as to the note meant, the amount of the note will determine the extent of liability. In Yaw v. Kerr, 47 Pa. 333, identification by reference to a note in a third party's hands was held sufficient to sustain and make applicable the promise, which took the case out of the statute. The case of Wolfensberger v. Young, 47 Pa. 516, is so unlike the present, as hardly to require notice. The letters relied on to remove the bar of the statute contained no express acknowledgment of any debt, referred to none specifically, ascertained no sum or amount to be paid, and promised nothing absolutely. It was little more than an offer of compromise. The case of Montgomery v. Cunningham, 104 Pa. 349, was, in part, an action for money lent, but the fact that the amount was not stated in the conversation relied on—the loan being otherwise identified—was not held to be fatal to the plaintiff's case, either in the Supreme Court or in the court below. The case did not turn upon this point, but on the question as to whether the promise was conditional. In Lowrey v. Robinson, 141 Pa. 189, there was no evidence of a clear and unequivocal admission of indebtedness, nor any distinct promise to pay any sum ; there was simply a declaration of an intention to pay, but this, said the court, is not the equivalent of a promise to pay ; ' it is more in the nature of the expression of a desire to pay, and from this there is no implication of a promise.' We do not dispute the general principle recognized in these and many other cases, that the promise, whether express or implied, must be such as to identify the debt, either in express terms or by reference to something by which its nature and amount can be definitely and certainly ascertained, but we cannot agree with the defendant's counsel that there was no evidence of such identification in this case. If, as the plaintiff says, he went over all the work he had done for the defendant, and declared he had not been paid for it, and then the defendant in response said, ' I will pay you every cent,' we conclude that the evi-

dence fulfilled the requirements of the rule, although the exact amount in dollars and cents was not mentioned. The evidence was quite as full and explicit in all of the essentials necessary to avoid the bar of the statute as was the evidence in the case of Patton's Exrs. v. Hassinger, 69 Pa. 311, and Titman v. Titman, 64 Pa. 480. After a careful reconsideration of the case we do not think we would have been justified in withdrawing it from the jury."

Verdict and judgment for plaintiff for $1,420.

*Error assigned* was refusal of request for binding instructions for defendant, quoting them.

*Wm. S. McLean,* for appellant.—The first conversation fails to identify the debt, and for this reason cannot take the case out of the operation of the statute of limitations : Bank v. Patton, 14 Pa. 479 ; Suter v. Sheeler, 22 Pa. 308 ; Wolsenberger v. Young, 47 Pa. 516 ; Palmer v. Gillespie, 95 Pa. 340 ; Wesner v. Stein, 97 Pa. 322 ; Lawson v. McCartney, 104 Pa. 356 ; Landis v. Roth, 109 Pa. 621 ; Chapman's Ap., 122 Pa. 331 ; Lowery v. Robinson, 141 Pa. 189.

The second conversation does not state how much plaintiff claimed ; does not show that defendant admitted that he owed anything ; does not show that plaintiff and defendant agreed how much was due. Therefore the debt in suit cannot be revived : Suter v. Sheeler, 22 Pa. 308 ; Shitler v. Brewer, 23 Pa. 415 ; Wolsenberger v. Young, 47 Pa. 516 ; Johns v. Lantz, 63 Pa. 324 ; Miller v. Baschore, 83 Pa. 356 ; Landis v. Roth, 109 Pa. 621.

The same conversation also fails to identify the debt sued for. It does not state what work or what bill was referred to.

The third conversation contains no direct promise to pay anything. The promise is conditional and therefore insufficient : Bank v. Patton, 14 Pa. 479 ; Linderman v. Pomeroy, 142 Pa. 168 ; Kenner v. Zartman, 144 Pa. 179 ; 11 A. & E. Ency. of Law, 754.

The expression as to a credit which was never given would not be an acknowledgment of a debt or a promise to pay it.

*Edward A. Lynch, John T. Lenahan* with him, for appellee.
—The opinion of the court below shows clearly that all the

essentials to toll the statute were present, namely, the contract, percentage, specification of work, no payment, demand and promises.

The work and bill mentioned could refer only to defendant's houses. The amount claimed was five per cent on these. This was sufficient under Patton's Exrs. v. Hassinger, 69 Pa. 311; Titman v. Titman, 64 Pa. 480. See also Schmidt v. Pfau, 114 Ill. 494, cited in note to 13 A. & E. Ency. of L. 757.

In Emerson v. Miller, 27 Pa. 278, the identification of a bill was held sufficient as a presumption from the failure to produce the books by defendant.

The opinion of the court below distinguishes appellant's cases, and is produced as an irrefutable answer to his contention.

OPINION BY MR. JUSTICE McCOLLUM, Jan. 7, 1895:

This is a very stale claim and the only support it has is in the uncorroborated testimony of the plaintiff, which was contradicted in every material feature by the testimony of the defendant. It is for services alleged to have been rendered by the plaintiff for the defendant twenty-two years ago under a verbal agreement between them. The suit to enforce it was brought twelve years after it matured. The statement of it was filed eight years after the writ was served. The gross laches in the prosecution of the claim and the circumstances surrounding it raise a serious doubt concerning the merits and integrity of it. Amongst the matters which contribute to this doubt we note the relations and course of dealing between the parties before, during, and after the period in which it is alleged the services sued for were performed. The plaintiff was employed by the defendant as a carpenter nearly four years. In the last year he was employed he was paid four dollars a day and in the preceding years three dollars a day for his labor. The claim he now makes is for supervising the construction of certain buildings for the defendant in the fourth year, and is in addition to the four dollars per day paid to him for work during that period. He alleges that for supervising the construction of the defendant's buildings he was to receive five per cent of their cost and for an occasional inspection of the work on the Leavenworth block, for the proper performance of which the de-

fendant was responsible, he was to receive $200. His whole claim for this alleged supervision is $1,650, with interest thereon from May 1, 1872. In November, 1875, the plaintiff bought of the defendant a lot in Wilkes-Barre which he finished paying for on the 28th of January, 1884. The payments on the lot were made annually and they amounted to a sum less than the alleged indebtedness of the defendant to the plaintiff at the time of the purchase. It strikes the ordinary mind as somewhat singular that the defendant should pay or agree to pay the plaintiff thrice as much for his services the fourth year as he paid for like services during the preceding three years, and that the plaintiff should contract for and make payments on account of the lot as above stated and in the meantime allow the statute of limitations to bar the alleged indebtedness of the defendant to him. It must be conceded, we think, that the undisputed facts in the case have a decided tendency to discredit the plaintiff's claim and to substantiate the defendant's denial of it, and while the evidence was sufficient to carry the case to the jury on the question of the alleged contract and the services thereunder, the preponderance of it against the claim was so great that the allowance of the defendant's motion for a new trial would have been entirely proper.

But assuming that the indebtedness once existed, as claimed, was there proof of such an acknowledgment by the defendant of its existence as the law deems a sufficient answer to the plea of the statute of limitations? In considering this question we note the trend and effect of the decisions, without entering upon an extended citation and review of them. The statute of limitations as a defence to an action is no longer viewed with suspicion or thought to be unconscionable. It is now almost universally regarded by the courts as a statute of repose and is liberally construed by them. In England and in many of the states of this country a written acknowledgment or promise is essential to remove the bar of the statute. In Pennsylvania, however, an oral promise or acknowledgment is sufficient if it has the qualities demanded by the decisions in relation to it, although ROGERS, J., in delivering the opinion of this Court in Kensington Bank v. Patton, 14 Pa. 479, said that the law on the subject would not be upon a proper footing until a written acknowledgment or promise was required. To

remove the bar of the statute there must be a clear and definite
acknowledgment of the debt and a specification of the amount
due or a reference to something by which such amount can be
definitely and certainly ascertained: Miller v. Baschore, 83
Pa. 356. Any uncertainty either in the acknowledgment or
identification of the debt is fatal: Landis v. Roth, 109 Pa. 621.

Is the acknowledgment or promise shown in this case suffi-
cient to remove the bar of the statute ? The learned judge of
the court below thought that the conversations which plaintiff
testified he had with defendant in the winter of 1881 contained
an acknowledgment by the latter of the claim in suit and a
promise to pay it, but he rightly conceded that there was no
acknowledgment or promise previous to that time which had
the qualities required by the decisions on the subject. In order
to determine whether the conversations referred to contained
an acknowledgment sufficient to take this stale, extraordinary
and admittedly barred claim out of the operation of the stat-
ute, they must be considered separately. If either of them
contained such an acknowledgment, recourse to the other is un-
necessary. If it does not appear in either of their conversations
it cannot be inferred from both. In other words several insuffi-
cient acknowledgments will not constitute a sufficient one. It
is claimed that, in the first conversation referred to, the de-
fendant said to the plaintiff: " You need not be a bit afraid
of me, I will pay you everything I owe you. I will pay you
every cent." But these words did not contain an admission
that the defendant owed the plaintiff the claim in suit. They
did not constitute an acknowledgment or promise which is "so
distinct and palpable in its extent and form as to preclude hesi-
tation." They did not import more than the words, " I will pay
you all I owe you," which were held in Miller v. Baschore, su-
pra, insufficient to remove the bar of the statute. Nor do we think
there is anything in the conversations detailed by the plaintiff
which plainly refers the alleged promise of the defendant to
the claim in suit. What the plaintiff said about his claim was
" vague, shadowy and uncertain," and manifestly the outcome
of anger aroused by the defendant's request for a payment on
the lot. It furnished no basis for holding that the alleged
promise was to pay $1,650 with nine years' interest thereon
for work done during the year in which the defendant paid him

for his services more than he had before or has since received for them. It is well to remember in this connection that the plaintiff was testifying to a conversation which occurred twelve years ago, and in which, according to his account of it, he was an angry participant. Subsequent to the conversation we have considered, the plaintiff made a payment on the lot and said to the defendant, " If you can make any money out of it, all right, for I want mine," to which the latter replied : " You will get it, every cent." " No fear of that, I will pay you every cent I owe you." " He would give credit for the $250 on that lot," and " he would pay the rest just as soon as ever he could." But in this conversation, as in the preceding one, there was a failure to specify the amount of the debt, or furnish any basis on which the amount of it could be definitely and certainly ascertained. We think, therefore, that the plaintiff failed to show on the trial such an acknowledgment or promise as is required to remove the bar of the statute.

The specification of error is sustained.

Judgment reversed and venire facias de novo awarded.