[No. 4066.   Decided February 25, 1902.]

ISAAC LIBERMAN, *Appellant,* v. HARRY GURENSKY, *Respondent.*

LIMITATION OF ACTION — NEW PROMISE — SUFFICIENCY.

Under the rule that in order to revive a debt barred by the statute of limitations the promise to pay it must be certain, definite, unequivocal, and unconditional, a letter by the debtor to the creditor stating that "That little amount that I owe you will be paid some time. I don't know just how much it is. You say $1,000, but I never could figure that much. .I always thought that little Harry paid that debt, but as he did not settle it I'll see into it some time," is not an acknowledgment or promise sufficient to avoid the bar of the statute.

SAME — SIGNATURE OF DEBTOR TO ACKNOWLEDGMENT.

Under Bal. Code, § 4816, which provides that no acknowledgment or new promise shall be sufficient to suspend the statute unless it be contained in some writing signed by the party to be charged thereby, the signing of the debtor's name by another under his direction is a sufficient compliance with the statute.

Appeal from Superior Court, Spokane County.—Hon. WILLIAM E. RICHARDSON, Judge. Affirmed.

*Samuel R. Stern,* for appellant.

*Graves & Graves* and *P. F. Quinn* for respondent.

The opinion of the court was delivered by

WHITE, J.—It is alleged in the complaint, in substance, that prior to the 16th of November, 1884, the defendant, whose name was then Harry Gurensky, and one Harry Gurensky, were, as co-partners, engaged in business in San Antonio, Texas, under the firm name of H. & H. Gurensky; that plaintiff sold and delivered to H. & H. Gurensky goods of the value of $1,536.84; that on the 16th of November, 1884, the co-partnership of H. & H.

Gurensky was dissolved; that on such dissolution the defendant assumed and agreed to pay the plaintiff $768.17, one-half of the sum then due and owing from H. & H. Gurensky to the plaintiff; that no part of the said sum of $768.17 had been paid; that on the 26th of December, 1899, at Spokane, Washington, defendant in writing acknowledged the existence of said debt, and promised and agreed to pay the same, but has not done so. The answer denied these allegations, except that the defendant was a co-partner with H. Gurensky until the first day of November, 1884, that no payments had been made on the demand sued for, and that payment has been refused. For further defense the defendant pleaded the six-years statute of limitations, coupled with denials that he had at any time agreed, in writing or otherwise, to pay the plaintiff the alleged debt. The depositions of Pinkus Liberman and Isaac Liberman were taken on interrogatories and cross-interrogatories, and used in evidence on the trial. Pinkus Liberman testified, in substance, that Pinkus Liberman & Son were doing business in New York in 1883; that they sold on credit to the defendant a stock of merchandise; that the defendant started with this stock to San Antonio, Texas; that while at San Antonio the defendant continued to buy goods from Pinkus Liberman & Son on credit, thereby increasing the indebtedness; that, since the dissolution of P. Liberman & Son, the firm affairs were turned over to Isaac Liberman. The second cross-interrogatory was as follows:

"If in answer to the direct interrogatories you have stated anything about any indebtedness owing to you or any firm by the defendant, then state whether such statement is made of your own personal knowledge, and, if not, state the source of your information."

This interrogatory Pinkus Liberman answered as fol-lows:

"In my answer to direct interrogatory I stated that this defendant Gurensky was indebtedness to the firm of P. Liberman & Son for merchandise sold to him. I stated this from my own knowledge, as I had supervision of the office at that time, and had full control of the details of the affairs of the firm of which I was then a member."

Isaac Liberman testified that he was a member of P. Liberman & Son in 1883; that in 1883 defendant started to peddle in the city of New York, and purchased goods from P. Liberman & Son, and had been indebted to said firm right along; that defendant stated that he would like to go to San Antonio, where some of his friends were, in particular a cousin by the name of Harry Gurensky; that P. Liberman & Son decided to extend to him a liberal credit, and give him such merchandise as he should select; that in the latter part of November, 1891, he met the de-fendant at San Antonio, and the defendant said that just as soon as he made a little money "he would pay me [Isaac Liberman] every penny due me." He testified, in answer to cross-interrogatory 2, as follows:

"This indebtedness that I am suing for is indebtedness to me personally. My knowledge of this debt is derived from the fact that I sold the goods myself to this defendant on credit, while I was doing business as Isaac Liberman, after succeeding P. Liberman & Son."

He further testified to receiving the following letter from the defendant:

CLUB ROOMS, Nos. 110-112 Howart Street,
            Spokane, Wash., Dec. 25th, 1899.
Isaac Liberman:—

Dear Sir: Your letters at hand, and I have been a long time answering, but better late than never. I've been away for the last six months, off and on, and it comes pretty

hard for me to answer my correspondence unless I am at home.

In the last year I have been jumping around here and there, but my home is here. I am running club rooms here, and my interest is very light in it, but I am representing good people, and I have plenty money backing me. Whoever told you about me being a millionaire as you mentioned in one of your letters, misinformed you. I have made some money in the last couple of years, but I have invested in mining property and stocks. No doubt but I may be a millionaire some time if everything turns out right for me.

That little amount that I owe you will be paid some time. I don't know just how much it is. You say $1,000, but I never could figure that much. I always thought that little Harry paid that debt, but as he did not settle it I'll see into it some time.

I am very likely to be in New York some time this winter, and I'll be able to tell you more about it. I have about $12,000 of that kind of debts. I would like to turn it over to you for collection, but it is liable to be good some time. If you look back to one of your papers of September you will see where my house was held up and robbed of close to $2,000, and that kind of punched a hole in me, and this war breaking out hurt us here in this country pretty bad. It stops a lot of English capital from coming in.

I've got a big proposition for Cape Nome, Alaska, next spring, and if I do go in I will make all the money I will ever need the rest of my life. I will tell you all about it when I get to N. Y. I am sure to be there in March. I wish you a Happy N. Y.

                    Yours truly,
P. O. Box 1080.                    HARRY GREEN."

Samuel R. Stern, on behalf of plaintiff, testified that he was attorney for plaintiff, and that he had had a conversation with the defendant about the letter testified to by Isaac Liberman; that defendant came to his office in re-

sponse to a letter written to him, and was then shown the letter referred to by Isaac Liberman; that he (Stern) then told the defendant that in his opinion the letter took the claim of the plaintiff against the defendant out of the statute of limitations, as there was an acknowledgment of the indebtedness contained in the same; that thereupon defendant stated that he had not written the letter himself, but some one else had written it for him, although not exactly as he wanted it written; that Green then stated that he was going to New York, and would see the plaintiff with reference to the claim, and arrange it with him. He further testified that he permitted the defendant to read the entire letter. The defendant, in his own behalf, testified that he received several communications from Mr. Stern; that he went to Mr. Stern's office and was there permitted to see the letter attached to the deposition of Isaac Liberman, but saw it at a distance; that Mr. Stern said to him that he had a claim on account of goods that were sold to him by Mr. Liberman when he was in business in Texas with a relative of the same name; that Mr. Stern told him that the firm of P. Liberman & Son had a bill against him for goods that were bought in 1881 or 1883, and that Mr. Stern said he did not think defendant owed the debt; that it was the debt of the firm of H. & H. Gurensky. He further testified that he had turned over to his partner two teams and some dry goods to pay his share of the indebtedness; and supposed his partner had paid the balance. He further testified that he got a letter from Liberman telling him that "Little Harry" never paid that money; that an uncle of his was the leader of the firm of H. & H. Gurensky; that he and his uncle did business together; that the uncle was known as "Little Harry"; that he was doing business with Liberman & Son eighteen or nineteen years ago, and that

he and his uncle did business together in Texas; that he wrote to Liberman & Son in 1883, and told them that he was going to quit the business, and that little Harry would continue the business; that he supposed they took him ("Little Harry") for the debt.

The jury rendered a verdict in favor of the plaintiff for $1,653. A motion for a new trial was made by the respondent. This motion was granted, and the verdict was set aside; the court stating in the order that the motion was granted upon the ground that the letter relied upon by the plaintiff as an acknowledgment or new promise was not sufficient to suspend the running of the statute of limitations. The only question before us is the sufficiency of the letter of December 25, 1899, as an acknowledgment or promise to pay the debt sued for so as to avoid the statute of limitations. We have held that the statute of limitations is not an unconscionable defense; that such statutes are vital to the welfare of society, and are to be favored in the law; that they stimulate to activity, and punish negligence. *Deering v. Holcomb,* 26 Wash. 588 (67 Pac. 240). Courts do not look with favor on suits for stale demands. The tendency of modern decisions has been to construe the statute more liberally in favor of debtors, and not to torture vague expressions into acknowledgments or promises when the language does not clearly impart such construction. *Howard v. Windom,* 86 Tex. 560 (26 S. W. 483). When the plaintiff's cause of action is barred by the statute, the burden of proof is upon him to prove such facts as will relieve from the bar.

"It is clear that one who claims the benefit of any exception to the statute must prove the facts upon which he relies; and if on the plaintiff's own showing the statute stands in the way, he must prove such facts as are neces-

sary to take the case out of the operation of the statute."
1 Jones, Evidence, § 192.

An acknowledgment or promise made *after* the bar of
the statute creates a new contract. *McCormick v. Brown,*
36 Cal. 180 (95 Am. Dec. 170).

When the creditor sues on such new contract, the burden
is justly cast upon him to establish the particular debt to
which the acknowledgment or promise applies, and mere
proof of the acknowledgment or promise is not sufficient.
There must be at least the *prima facie* proof that the ac-
knowledgment or promise applies to the particular debt
sought to be recovered under the allegations of the com-
plaint. As was said by the supreme court of Colorado in
*Sears v. Hicklin,* 3 Colo. App. 331 (33 Pac. 137) :

"Although, after a new promise, the action can be main-
tained upon the original consideration, recovery can only
be had upon the new contract to pay; hence, it must have
the necessary elements of a contract. It must be a full
recognition of the indebtedness evidenced by the note, and
a promise to pay that particular debt. It was very proper
that the promise should have been required to be so limited
as to apply to the particular note. A general admission of
indebtedness would not answer the purpose. The rule is
well settled that 'there must not be any uncertainty as to
the particular debt to which the admission applies. It
must be so distinct and unambiguous as to remove all
hesitation in regard to the debtor's meaning.' "

In *Bell v. Morrison,* 1 Pet. 351, Judge STORY said:

"If the bar is sought to be removed by the proof of a new
promise, that promise, as a new cause of action, ought to
be proved in a clear and explicit manner, and be in its
terms unequivocal and determinate."

See, also, *Palmer v. Gillespie,* 95 Pa. St. 340 (40 Am.
Rep. 657), and *Gartrell v. Linn,* 79 Ga. 700 (4 S. E. 918).

There was no evidence in this case that on the dissolution of the firm of H. & H. Gurensky the respondent agreed to pay the plaintiff $768.17, or any other sum, on account of one-half of the indebtedness of the said firm to plaintiff. There was no proof of any particular sum due from the firm of H. & H. Gurensky on the 16th day of November, 1884, or at any other time. The expression in the letter: "That little amount that I owe you will be paid some time. I don't know just how much it is. You say $1,000, but I never could figure that much. I always thought Little Harry paid that debt, but as he did not settle it I'll see into it some time," certainly does not in a clear, explicit, unequivocal, and determinate manner, refer to the indebtedness mentioned in the complaint. This statement might apply to the indebtedness described in the complaint, or it might apply to the indebtedness described in the direct examination of appellant as having been contracted by the respondent while in business in New York with the firm of Liberman & Son, or it might apply to that part of the indebtedness described in the direct examination of the Libermans as having been contracted by the respondent with the firm of Liberman & Son after he went to Texas, or it might apply to the indebtedness testified to by the appellant as having been contracted with him personally, after the dissolution of the firm of Liberman & Son, by the respondent personally. The original letter sent up with the record is not literally quoted in the appellant's brief. In the original, where "Little Harry" is referred to, the language is: "I always thought that little Harry paid that debt, but as he did not settle it I'll see *into* it some time." This language may mean that he will see into why Little Harry did not pay the debt, or it may mean that he will see into paying the debt himself.

27—27 WASH.

The language is of doubtful meaning, and does not amount to an acknowledgment of the debt in terms sufficient to warrant the inference of a promise to pay it. The only acknowledgment in the letter which the appellant can rely upon is: "That little amount that I owe you will be paid some time. I don't know just how much it is. You say $1,000, but I never could figure that much." This is but a mere acknowledgment that he owes the appellant a little amount. He says this little amount will be paid some time. He does not say he will pay it. He, in effect, claims that Little Harry was to pay it, and he will see into it some time. This may mean, as we have said, that he will see into Little Harry paying it, or it may mean that he will pay it. A mere acknowledgment of the debt is not sufficient. The acknowledgment must be in terms sufficient to warrant the inference of a promise by the debtor to pay the debt, and that the particular debt is unpaid. In *Bell v. Morrison, supra,* the acknowledgment was, "I know we are owing you and I am anxious it should be settled." But in addition thereto the debtor said that he did not have the books and papers relative to the claim, which put it out of his power to settle the account at that time. The court said that an admission that something is due or some balance owing cannot be construed into a promise to pay any debt or balance which the party may assert or prove before a jury. In *Miller v. Baschore,* 83 Pa. St. 356 (24 Am. Rep. 187), the debtor acknowledged the receipt of a letter relating to the balance of a note "I owe you," and said that at a certain time "I'll pay you all I owe you." The court held the acknowledgment insufficient, saying:

"The evidence was not sufficient to relieve the claim of the plaintiff below from the effect of the statute of limitations. In order to effect such a result there must be a clear and definite acknowledgment of the debt, a specification of the amount due or a reference to something by

which such amount can be definitely and certainly ascertained, and an unequivocal promise to pay. In the case under consideration the acknowledgment and undertaking of the defendant lack these essential characteristics. . . . Applying the above-stated doctrine to the case in hand and it is found to be utterly wanting in every element necessary to rescue it from the grasp of the statute; the defendant promises to pay a balance of a note, but neither note nor balance is stated; he promises to pay what he owes, but whether that is much or little we are not informed; there is, in fact, neither the required certainty nor perspicuity in the evidence produced to break down the defense; hence the attempt has resulted in failure."

See, also, *Quarrier's Admr. v. Quarrier's Heirs,* 36 W. Va. 310 (15 S. E. 154); *Chapman v. Barnes,* 93 Ala. 433 (9 South. 589); *Nelson v. Hanson,* 92 Iowa, 356 (60 N. W. 655, 54 Am. St. Rep. 568); *Patterson v. Neuer,* 165 Pa. St. 66 (30 Atl. 748); *Ward v. Jack,* 172 Pa. St. 416 (33 Atl. 577, 51 Am. St. Rep. 744).

In the case under consideration there is no acknowledgment of any specific amount due, no reference to any specific matter by which the amount of indebtedness intended to be acknowledged can be ascertained, and we think it falls squarely within the rule laid down in *Bell v. Morrison, supra,* and other cases cited.

There is another reason why the letter is insufficient to relieve from the statutory bar. Its terms rebut any inference of an intention to promise unequivocally to pay the debt. The promise is that it will be paid some time,—to see into it some time. The use of these terms is explained by the context; for it appears therefrom that the debtor was financially embarrassed at the time of writing the letter, but had certain ventures upon which he expected to realize at some time in the future. The sole promise, then, if we can construe it as a promise, was to pay at some time

in the future, when the debtor should be relieved from the financial difficulties which prevented him from paying it at the time. The law is very well settled that to take a case out of the statute the acknowledgment must be unequivocal. As said in *Bell v. Morrison, supra*:

"If there be accompanying circumstances, which repel the presumption of a promise or intention to pay; if the expressions be equivocal, vague, and indeterminate, leading to no certain conclusion, but at best to probable inferences, which may affect different minds in different ways; we think they ought not to go to a jury as evidence of a new promise to revive the cause of action."

The debtor cannot be held to a greater promise than he made. As was said in *Quarrier v. Quarrier, supra*: "The court makes the debtor re-promise no further than he intends to, and does." Here the promise is to pay at some time in the future, inferentially when the debtor has realized his expectations upon his mining ventures. *Krueger v. Krueger,* 76 Tex. 178 (12 S. W. 1004, 7 L. R. A. 72); *Hancock v. Bliss,* 7 Wend. 267. The letter was written long after the debt was barred, and in such a case effect must be given to everything in the letter which savors of a condition. *Cornforth v. Smithard,* 5 Hurl. & N. 13.

No other construction of the letter relied upon here is possible than that the respondent attached to the promise to pay the debt a condition that he would do so at some future time when his circumstances became easier. Had the condition been that he would pay at a definite time, or when he became possessed of a certain amount of money, an action might be maintained by showing that the condition had been performed. But the terms of the condition make it impossible to show this. The promise is to pay at some uncertain time in the future, and as to when that time should have arrived the respondent clearly intended

to be the sole judge. This is his right. The debtor after the statute has run is master of the situation. If the creditor expects to recover any part of the debt he must take it upon such terms as the debtor sees fit to dictate. 1 Wood, Limitation of Actions (2d ed.), p 231, § 77.

The evidence shows that the letter was written by the direction of the respondent, and if the writer exceeded his authority it was upon the respondent to show wherein that authority had been exceeded. We do not think it necessary that the letter should have been signed by the respondent personally. If his name was signed to it under his direction that is a sufficient compliance with the statute, which provides that no acknowledgment or new promise shall be sufficient to suspend the statute unless it be contained in some writing signed by the party to be charged thereby.

We do not think that the letter contains a sufficient acknowledgment or promise to take the case out of the statute of limitations. Bal. Code, § 4816. The judgment of the court is therefore affirmed, with costs to respondent.

REAVIS, C. J., and ANDERS, MOUNT, FULLERTON, HADLEY and DUNBAR, JJ., concur.