[No. 9689.  Department Two.  November 28, 1911.]

JOSEPH COE *et al., Appellants,* v. JOHN ROSENE,
*Respondent.*[1]

BANKRUPTCY—DISCHARGE—REVIVAL BY NEW PROMISE—REQUISITES.
A letter by a bankrupt stating that he had paid some and expected
to pay more of his discharged debts, specifying one that would be
the next one, followed by another letter stating that he would hold
the promise good but did not know when he could do what he
wanted to, is not sufficient to revive the debt, under the rule that
the new promise must be clear, distinct and unequivocal.

Appeal from a judgment of the superior court for King
county, Gay, J., entered March 10, 1911, upon findings in
favor of the defendant, after a trial on the merits before the
court without a jury, in an action on contract.  Affirmed.

*Geo. H. King (M. G. Smith, of counsel), for appellants.*
*Kerr & McCord, for respondent.*

MORRIS, J.—This case involves the sufficiency of a promise
to revive a debt discharged in bankruptcy.  The facts are
these:  In February, 1900, respondent filed a petition in
bankruptcy in the United States district court at Chicago,
and obtained his discharge in due time thereafter.  Among
the claims allowed were two notes given to Cephas Coe, one
for $4,500, the other for $3,000.  Cephas Coe died in 1903,
and the appellants are his administrators.  In November,
1903, Joseph Coe, as such administrator, wrote respondent
a letter, in which he informed him of the death of Cephas Coe,
and requested a payment upon these notes.  Respondent re-
plied to this letter, saying, in so far as is here material:

"I regret that I cannot comply with your request.  I had
expected to do something of that kind last spring, but un-
expected matters prevented me.  I am now on my way to
Europe and things may be different when I return. . . .

[1] Reported in 118 Pac. 881.

Yes, I have paid quite a few of the old losses, expect to pay more, and the next one shall be to the family of my departed friend."

In September, 1904, R. G. Coe, another brother of Cephas Coe, wrote respondent a letter, making a similar request, to which respondent replied in part:

"Replying to yours of the 9th inst., I advised your brother Joseph last winter that circumstances had obliged me to discontinue sending checks east; but that I held my promise to Cephas good, but do not know when I can do what I want to."

In addition to the letters, appellant relies upon an alleged oral promise made to W. H. Hill, an attorney representing the appellants, in August, 1909, wherein respondent told Hill he would pay the $4,500 note, with interest, unless he was barred from doing so by his exemptions; that he had no recollection of the $3,000 note, but if Hill could furnish him any evidence of that indebtedness, he would pay that as freely as the $4,500 note. Respondent admits having a conversation with Hill, in which Hill sought to obtain some money from him upon the indebtedness of these two notes, but denies making any promise of any nature to pay either of them. Mr. Hill's testimony was taken by deposition, and there is a sharp conflict between him and respondent as to any promise to pay either of these notes. The court has made an express finding that no promise was made to any person at any time, and refused appellants' request to find a promise made to Hill.

After reading the deposition of Hill and the testimony of respondent on this point, we cannot say the trial court was in error in holding adversely to appellants as to the promise to Hill. There is no such preponderance in favor of appellants as to justify us in making a contrary finding. We are therefore brought back to the two letters to determine if they contain a sufficient promise to pay the notes to justify a holding that the debt was revived. Many cases have been

cited in the briefs, and we have made an independent examination of the authorities. They all agree upon two propositions: (1) In order to revive a debt discharged in bankruptcy proceedings, the new promise must be clear, distinct, and unequivocal, as well as certain and unambiguous. Our own cases, in discussing the nature of the promise necessary to defeat the bar of the statute of limitations, establish this rule. *Liberman v. Gurensky,* 27 Wash. 410, 67 Pac. 998; *Bank of Montreal v. Guse,* 51 Wash. 365, 98 Pac. 1127; *Thisler v. Stephenson,* 54 Wash. 605, 103 Pac. 987. (2) The mere acknowledgment of a debt or the expression of an intention to pay is not sufficient to revive the debt. *Elwell v. Cumner,* 136 Mass. 102; *Brewer v. Bonyton,* 71 Mich. 254, 39 N. W. 49; *Allen & Co. v. Ferguson,* 85 U. S. 1; *Yoxtheimer v. Keyser,* 11 Pa. St. 364, 51 Am. Dec. 555; *Bartlett v. Peck,* 5 La. Ann. 669; *Riggs v. Roberts,* 85 N. C. 151, 39 Am. Rep. 692.

Applying these principles to the two letters, we cannot find a sufficient promise in either to revive this debt. In the first letter respondent says:

"Yes, I have paid quite a few of the old losses, expect to pay more, and the next one shall be to the family of my departed friend."

This language cannot be said to be a certain, clear, distinct, and unequivocal promise to pay these notes. The debtor says he has paid many of the "old losses," and expects to pay more. Nothing here of the nature of the legal requirements. The promise must be found in the next clause when read in connection with what precedes it: "and the next one;" that is, the next old loss; not that he clearly, distinctly, and unequivocally promises to pay, but that he *expects* to pay, "shall be to the family of my departed friend." An expectation to pay, or a present intention to pay, cannot be construed into a promise to pay. "Expect to pay" is nothing more than a desire, willingness, or intention to pay. The law requires more. It can be satisfied only with a dis-

tinct and clear promise to pay. To hold that, when a man announces he expects to do a thing, he thereby obligates him with a liability to do that thing, is to go further than we are willing to hold. We cannot find any words of promise in this letter. It contains nothing more than an acknowledgment of the debt and an expression of an intention to pay it, which, under all the authorities, is not sufficient. The second letter is even weaker in its language. He says he holds his promise "to Cephas good;" that is, he acknowledges the debt. Then he says, "but do not know when I can do what I want to." If this means anything, it is that he wants to pay the debt, wants to make his promise to Cephas good, but does not know when he can. To *want* to pay means to wish to pay, to desire to pay; but it is not a promise to pay. It can hardly be said to be an intention to pay. If it can be said to be the expression of an intention to pay, it assuredly can mean nothing more.

Not finding in either of these letters anything upon which to base appellants' contention, the judgment of the lower court is affirmed.

DUNBAR, C. J., CROW, and ELLIS, JJ., concur.