[No, 25177. Department One. January 9, 1935.]

ANGELE LOUISE BECKMAN, *Appellant,* v. ALASKA
DREDGING COMPANY *et al., Respondents.*[1]

*Stratton & Kane* (*Herbert S. Little,* of counsel), for
appellant.

*William A. Gilmore,* for respondents.

MILLARD, J.—This is an action against the Alaska
Dredging Company and others on a number of promis-
sory notes. To the second amended complaint, the
Alaska Dredging Company interposed a demurrer on
the grounds that it does not state facts sufficient to con-
stitute a cause of action, or any cause of action,

[1]Reported in 40 P. (2d) 117.

against the demurrant; and that it affirmatively appears in the second amended complaint that the action was not commenced within the time limited by law.

"Actions can only be commenced within the periods herein prescribed after the cause of action shall have accrued . . . The period prescribed in the preceding section for the commencement of actions shall be as follows: . . . Within six years: . . . An action upon a contract in writing, or liability express or implied arising out of a written agreement . . ." Rem. Rev. Stat., §§ 155, 156, 157 [P. C. §§ 8160, 8161, 8162.]

The demurrer was sustained. The appeal is from the judgment of dismissal, rendered upon plaintiff's refusal to plead further.

The complaint alleges that the defendant Wonder Dredging Company executed and delivered to the Alaska Dredging Company, as payee thereof, three promissory notes (one on May 4, 1910, one on May 31, 1910, and one on May 29, 1912), payable on demand. On May 29, 1912, the defendant Nome Consolidated Dredging Company executed and delivered to the Alaska Dredging Company, as payee, a promissory note payable on demand. On November 7, 1912, the Nome Consolidated Dredging Company and Alaska Dredging Company sold, transferred, endorsed and delivered to Herman Beckman each of said promissory notes.

Beckman died January 19, 1916. He was survived by his widow and three children. One of the children is the appellant. The widow and the other two children are named as parties defendant. Appellant further alleges that, by operation of the laws of Ohio, in which jurisdiction the estate of the deceased intestate was probated, each of the three children became the owner of an undivided two-ninths interest, and the surviving widow became the owner of an undivided

one-third interest, in and to each of the four promissory notes described above.

On November 27, 1920, an administrator of the estate of Herman Beckman, deceased, was appointed by the probate court of Cuyahoga county, Ohio. Thereafter, the four notes in question came into possession of the administrator, who endorsed, transferred and assigned the four promissory notes to the widow and three children according to their proportionate interests as above set forth. The complaint further alleges:

'"That plaintiff is informed and believes and therefore alleges it to be a fact, that E. E. Powell now is, and at all times herein mentioned has been, the president and manager of each of the defendants, and either individually or through the cooperation of his brothers, has been in control of each of the defendant corporations; and that each of said defendant corporations has continually and repeatedly at all times herein mentioned held out the said E. E. Powell as their managing agent, with full power and authority to deal with Herman Beckman, and since the death of Herman Beckman, with the various parties in interest, with reference to said promissory notes; and that both prior and subsequent to the death of Herman Beckman there has been a continued correspondence between the defendant corporations and E. E. Powell as their managing agent on the one hand, and Herman Beckman, Angele Sartorio, and other persons on behalf of the parties in interest under said notes, on the other hand, relating to the obligations of the defendant corporations under said notes (and that in particular under dates of October 6, 1916, January 9, 1918, May 6, 1921, and December 14, 1922, the defendant corporations acknowledged in writing said promissory notes), and in the letters dated May 16th, 1921, and December 14th, 1922, discouraged any action being commenced upon said promissory notes at the time, on account of financial conditions. That affiant is informed and believes and therefore alleges it to be a fact that in the late

spring or early summer of 1926, the defendant corporations acknowledged both orally and in writing the liability under said promissory notes. That originals and copies of the letters under the dates above mentioned are in possession of plaintiff, together with other letters and correspondence, and that the same are available for inspection by the defendants, and copies thereof will be furnished to the defendant corporations upon request. That plaintiff and her mother and brother and sisters were confined in Italy from prior to the death of Herman Beckman until 1920 on account of the World War and were unable to protect their rights at law.

"That the plaintiff has at all times been a minor under the age of twenty-one years until the 24th day of January, 1932, at which date she attained her majority, and that since said date the plaintiff has assumed full charge and responsibility of her personal affairs, and has made demand upon the defendants and each of them for the payment of said notes, or the portion of the principal and interest due thereunder represented by her interest therein, but the defendants have wholly failed, neglected and refused to pay the same or any part thereof.

"That plaintiff has made Angele Sartorio, Henry Herman Beckman and Hermana Beckman additional parties defendants pursuant to the stipulation on file herein, and for the purpose of assisting in the determination of all of the rights of the parties in interest without the multiplicity of actions, and each of said parties in interest, to-wit: Angele Sartorio, mother of plaintiff, Henry Herman Beckman, and Hermana Beckman are now living and are still the holders of said proportionate interest in said promissory notes."

The four promissory notes were payable on demand, therefore they should have been presented for payment within a reasonable time after issue.

"Where the instrument is not payable on demand, presentment must be made on the day it falls due. Where it is payable on demand, presentment must be made within a reasonable time after its issue . . ." Rem. Rev. Stat., § 3462 [P. C. § 4142].

There is no allegation that any payment was ever made on any of the four notes.

 Two years after the death, January 19, 1916, of Beckman, the four notes, dated May 4, 1910, May 31, 1910, and two May 29, 1912, were barred by the statute of limitations. Rem. Rev. Stat., § 157 [P. C. § 8162]. Four years and ten months elapsed after the death of Beckman before anything was done respecting the notes. On November 27, 1920, the administrator was appointed. Thereafter, he assigned the notes to the appellant, to the widow and to the other two children. The appellant, who, it is alleged in paragraph fourteen of the second amended complaint, did not attain her majority until January 24, 1932, was a minor at that time. Only through administration of the estate, not by right of descent, could she acquire title to the notes. It is apparently conceded in the second amended complaint that, at the time of the appointment of the administrator in 1920, the statute of limitations had run against the notes.

At the time of Beckman's death, the statute of limitations was running against the notes. It continued to run without interruption until action on the notes was barred. The assignment of the notes to appellant by the administrator could not, because appellant was a minor, create in her a right of action against the respondent on the notes. When she became the assignee of the notes in 1920, the notes had expired, hence Rem. Rev. Stat., § 169 [P. C. § 8176], is not applicable, as that provision applies only where a cause of action accrues or exists in favor of the minor.

"It was contended in oral argument by the attorney for respondent, that conceding the statute of limitations to have commenced running against respondent in 1880, it ceased to run upon the death of plaintiff's intestate Marlin in 1890; and that, consequently, the statute has not yet run its full course against re-

spondent's claim. The settled law of the country is opposed to this contention. In discussing the general principles of the statute of limitations, Wood, in his first volume on Limitations, page 9, says:

" 'One of the most important and universal rules (which is not, however, without exception) is, that time, when it has once commenced to run in any case, will not cease to do so by reason of any subsequent event which is not within the saving of the statute. Thus, it has been held that it is no answer to a plea of the statute, unless otherwise provided therein, that, after the cause of action accrued, and after the statute had commenced to run, the debtor within six years died, and that by reason of litigation as to the right of probate, an executor of his will was not appointed until after the expiration of six years, and that the action was brought within a reasonable time after probate was granted.' Citing *Rhodes v. Smethurst,* 4 M. & W. 42; *Daniel v. Day,* 51 Ala. 481; and many other cases from Oregon, Vermont, Wisconsin, Illinois, Alabama, Kentucky, the United States Supreme Court, Maryland and South Carolina.

"The general holding of the courts is that the statute of limitations does not begin to run until there is some one to sue or liable to be sued; but that when the statute once begins to run the death of another party does not impede its operation. For instance, in case the action arises after the death of a party to a contract, then the statute would not begin to run until an administrator or representative was appointed. But if it arose before, the death or disability would not interfere with the running of the statute; as the rule is laid down by *Hogan v. Kurtz,* 94 U. S. 773, that when the statute begins to run it is not arrested by any subsequent disability, unless expressly so provided in the statute, and the person who claims the benefit of general exceptions in the statute can only avail himself of such disabilities as existed when the right of action first accrued.

"In *Doe v. Jones,* 4 T. R. 300, Lord Kenyon said:

" 'I confess I never heard it doubted till the discussion of this case, whether, when any of the statutes of limitations had begun to run, a subsequent disability

would stop their running. If the disability would have such an operation on the construction of one of those statutes, it would also on the others. I am very clearly of the opinion on the words of the statute of fines, on the uniform construction of all the statutes of limitations down to the present moment [1791], and on the generally received opinion of the profession on the subject, that this question ought not now to be disturbed. It would be mischievous to refine, and make nice distinctions between the cases of voluntary and involuntary disabilities.'" *McAuliff v. Parker,* 10 Wash. 141, 38 Pac. 744.

■ Counsel for appellant argue that paragraph thirteen of the second amended complaint alleges

". . . all material facts necessary to enable the appellant to prove a written acknowledgment sufficient to take the case out of that statute of limitations . . . that the defendant corporation has acknowledged its obligations under said notes to the appellant and the other parties in interest, both orally and in writing, on several occasions, the last occasion being in the late spring or early summer of 1926. . . . Certainly this paragraph is a sufficient acknowledgment to take the case out of the statute of limitations."

The allegations that

". . . the defendant corporations acknowledged in writing said promissory notes . . . and discouraged any action being commenced upon said promissory notes at the time, on account of financial conditions . . . the defendant corporations acknowledged both orally and in writing the liability under said promissory notes"

are not sufficient to revive the notes. There is no allegation that the respondent ever in writing acknowledged the debt or promised to pay the notes.

"If the cause of action is to be revived, it must be based wholly on the written statement.

"A new promise must be clear, distinct and unequivocal, as well as certain and unambiguous. The mere

acknowledgment of a debt, or the expression of an intention to pay, is not sufficient to revive the debt. *Liberman v. Gurensky,* 27 Wash. 410, 67 Pac. 998; *Bank of Montreal v. Guse,* 51 Wash. 365, 98 Pac. 1127; *Thisler v. Stephenson,* 54 Wash. 605, 103 Pac. 987; *Coe v. Rosene,* 66 Wash. 73, 118 Pac. 881, Ann. Cas. 1913C 741, 38 L. R. A. (N. S.) 577.

" 'But where the acknowledgment is made after the statute has already run, the action must be upon the new agreement, consequently it is in the nature of an original obligation and should be strictly construed. The debt being barred, it is possible that one may acknowledge it without intending to pay it. If this distinction is kept in mind most of the apparent inconsistencies in the cases will be cleared up.' *Griffin v. Lear,* 123 Wash. 191, 212 Pac. 271.

"It is at once apparent that the writing relied upon purports to be nothing more than 'a correct statement of the Meredith Timber Account.' There is nowhere anything in the nature of a promise to pay, or from which a promise to pay may be inferred. The most that can be said of it is that it is an acknowledgment that such an account actually existed in the past. It is more indefinite and indeterminate than alleged new promises set forth in the *Gurensky, Guse* and *Rosene* cases, *supra,* which were held insufficient, under our statute, to revive the debt.

"The allegations in the complaint respecting the trust agreement on the part of respondents do not aid appellants. The agreement to revive the debt must, under Rem. Comp. Stat., § 176, be contained in some writing signed by the party to be charged thereby." *Tucker v. Guerrier,* 170 Wash. 165, 15 P. (2d) 936.

*Bank of Montreal v. Guse,* 51 Wash. 365, 98 Pac. 1127, was an appeal from a judgment dismissing an action upon promissory notes, upon sustaining a demurrer to the complaint. We affirmed the judgment. In that case, the plaintiff set forth in the complaint the correspondence upon which it relied to take the case out of the operation of the statute of limitations. We held that the detached fragmentary statements

were insufficient, inasmuch as they did not contain a clear and unequivocal promise to pay. We said:

"Our statute provides (Bal. Code § 4816; P. C. § 300), that no acknowledgment or promise shall be sufficient evidence of a new or continuing contract whereby to take the case out of the operation of this chapter, unless the same is contained in some writing signed by the party to be charged thereby. It is contended by the respondent that there are several rules of law applicable to the question in this case, any of which considered alone would be sufficient to sustain the judgment of the superior court: (1) detached statements and fragmentary writings cannot be considered together in the utterance of a new promise or acknowledgment; (2) where no promise to pay is made, the acknowledgment of the particular debt must be in terms so clear and unequivocal that a promise is raised as a natural inference from the language used; (3) where there are several debts, a general acknowledgment of the same is insufficient; (4) where the debtor claims offsets to the debt, this rebuts the inference of a promise to pay; (5) where the acknowledgment leaves the amount of the debt in dispute, it is insufficient.

"These propositions, we think, are all well established by the great weight of authority. Many cases are cited by both the appellant and respondent, in which the correspondence relied upon is set forth, but it would be fruitless to review them here, for the reason that the expressions used in the various cases cited are different and might be differently construed by different courts. Every case, therefore, will have to be construed with reference to the language used in that particular case. Statutes of limitations are in aid of a sound public policy and have received the almost universal commendation of law-making bodies. Referring to the first rule invoked by the respondent, if detached statements and fragmentary writings of different dates, susceptible of different interpretations and which might be equally applicable to different transactions or debts, should be held to be sufficient to remove the bar of the statute, such holding would tend

to destroy the object of the statute and make uncertain and speculative the very thing which the statute sought to make definite and certain, and mere inference would be substituted for direct and positive expression.

"It cannot be contended in this case that there is any promise whatever to pay the alleged debt, or any part of it. Conceding that the statement in *Liberman v. Gurensky*, 27 Wash. 410, 67 Pac. 998, which is criticized by the appellant, and which is to the effect that a mere acknowledgment of a debt is insufficient, was an extreme statement and not necessary to the decision of the case, it is well established that, where acknowledgment alone is relied upon, the expression of the acknowledgment must be clear and unequivocal and made with reference to a particular debt which is subsisting at the time. The acknowledgment must be so clear that a promise to pay must necessarily be implied."

The judgment is affirmed.

BEALS, C. J., MAIN, TOLMAN, and GERAGHTY, JJ., concur.