[No. 4311-1. Division One. July 25, 1977.]

LOUIS LOMBARDO, *Respondent*, v. VINCE MOTTOLA,
ET AL, *Appellants*.

*Treece, Richdale, Meiner & Malone, David A. Richdale,*
and *Grant S. Meiner,* for appellants.

*Merges, Youngberg, Goucher, Allen, Larson & Brain* and
*Robert H. Larson,* for respondent.

SWANSON, J.—On December 23, 1964, Vince Mottola and
his wife Ada signed a promissory note in favor of Louis
Lombardo and his wife Nilda in the amount of $3,000.[1] No
payment was made on the note at any time. However, on
April 12, 1971, a letter was written by Vince Mottola to the
Lombardos which stated:

[1] "$3000.00                                        December 23, 1964
                                                      Seattle, Washington
"THE UNDERSIGNED, Vince Mottola and Ada Mottola, his wife, promise to pay
to the order of Louis Lombardo or Nilda Lombardo Three Thousand and no
hundredths ($3000.00) Dollars payable in lawful money of the United States of
America with interest thereon in like money from the date of execution until paid
at the rate of six per cent (6%) per annum on or before December 23, 1965.
"The payee of this note shall have an option until July 1, 1965 to receive pay-
ment of this note in shares of stock in Western Terrazzo Limited, Inc. to be

April 12, 1971

Mr. & Mrs. Louis Lombardo
5222 Matilija
Van Nuys, Calif. 91401

Dear Mr. & Mrs. Lombardo:

I am writing this letter to you regarding the note that my wife Ada Mottola and I gave you on the subject loan of $3,000.00 in cash made to us by you on December 23, 1964.

In view of our financial condition the last few years we have been unable to pay you this note. However, we are authorizing you to contact Oakland Terrazzo Co. to the attention of Mr. Mino Pella, who has an obligation to us in the amount of $3,000.00 and this letter will authorize Mr. Mino Pella of Oakland Terrazzo to pay to you direct, the $3,000.00 owing to me on account of the note that we owe Mr. & Mrs. Lombardo.

Thanking you in advance for your kind patience.

Sincerely yours,

/s/ VINCE MOTTOLA

When the Mottolas failed to make any payment on the note, the Lombardos instituted this action to recover the amount due. The Mottolas answered the complaint by affirmatively asserting the 6–year statute of limitations[2] as a bar to the collection of the debt.

---

formed by Vince Mottola in the State of Washington, as follows:

3000 shares of an original issue of 10,000 shares capitalization.

Notice of such election shall be given in writing to Vince Mottola at 818 Logan Building, Seattle, Washington not later than July 1st of 1965, and shall be for the full Three Thousand ($3000.00) Dollars evidenced by this note. The option set forth in this paragraph shall be non–assignable and non–negotiable.

/s/ VINCE MOTTOLA
/s/ ADA MOTTOLA

[2]RCW 4.16.040 states in pertinent part as follows:

"Actions limited to six years. Within six years:

". . .

"(2) An action upon a contract in writing, or liability express or implied arising out of a written agreement."

The cause was tried to the court sitting without a jury who entered a judgment in favor of the Lombardos. Although the trial court found that the debt was more than 6 years old, and thus barred by the statute of limitations, it also found that the April 12, 1971, letter adequately acknowledged the amount owed so as to revive the debt.[3]

The Mottolas now appeal and assign error to the following finding of fact:

> That on April 12, 1971, the defendants clearly acknowledged the debt by letter written to the plaintiff so as to remove the bar created by the statute of limitations and that said acknowledgment contained both an express and an implied promise to pay the $3,000.00 obligation, together with interest at the rate of six percent (6%) per annum, and that there is due and owing as of October 30, 1975 the sum of $4,950.00, and that said letter created a new contract for the payment of said promissory note.

Finding of fact No. 5. We find substantial evidence contained within the record to sustain the trial court's finding, and affirm.

■ The general rule prevailing in most jurisdictions, including our own, is that the running of the statute of limitations on a debt does not extinguish the debt but merely bars the remedy for the recovery of the debt. *In re Estate of Smith,* 179 Wash. 417, 38 P.2d 244 (1934). *See generally* 51 Am. Jur. 2d *Limitation of Actions* § 22 (1970). Because the original debt is not extinguished by the passage of time, our legislature has provided a means whereby the remedy for recovery on the debt may be revived. RCW 4.16.280. A review of the statute shows two distinct methods for revival of the remedy: (1) an acknowledgment in writing that the debt is unpaid, *or* (2) a promise to pay the debt. *See Cannavina v. Poston,* 13 Wn.2d 182, 124 P.2d 787

---

[3]RCW 4.16.280 states:

"No acknowledgment or promise shall be sufficient evidence of a new or continuing contract whereby to take the case out of the operation of this chapter, unless it is contained in some writing signed by the party to be charged thereby; but this section shall not alter the effect of any payment of principal or interest."

(1942). The statute does not require that both an acknowledgment *and* a promise occur; it merely states that either need be present to remove the case from the strictures of the statute of limitations.

Notwithstanding the plain language of the statute, there has evolved a distinction between acknowledgments occurring before the statute begins to run, and after. As stated by our Supreme Court in *Griffin v. Lear,* 123 Wash. 191, 200, 212 P. 271 (1923):

> A writing acknowledging a debt which has already been barred ought to be construed much more strictly than a writing acknowledging a debt against which the statute has not run. In the latter instance the original debt is acknowledged and the action must be upon it or upon the paper evidencing it, and under those circumstances it would seem that any acknowledgment of the debt ought to necessarily infer an agreement to pay it, unless there is something in the acknowledgment which leads to a necessarily contrary conclusion. But where the acknowledgment is made after the statute has already run, the action must be upon the new agreement, consequently it is in the nature of an original obligation and should be strictly construed.

In the instant case, appellant argues that the above quoted language requires that once the statutory period has run, an acknowledgment of the debt, as well as a promise to pay the debt, must occur in order to recover on the debt.

A review of Washington cases shows that our appellate courts have adhered to the distinction articulated in *Griffin v. Lear, supra.*[4] The early Washington decisions, however, do not discuss the distinction; rather, they concern themselves with whether or not an unequivocal acknowledgment was made by the debtor such that a promise to pay could justly be implied. *See Bank of Montreal v. Guse,* 51 Wash.

---

[4] The *Griffin* court found support for the distinction in what was perhaps the first decision to articulate it. In *Southern Pac. Co. v. Prosser,* 122 Cal. 413, 55 P. 145 (1898), the California Supreme Court interpreted a statute of limitations quite similar to our own by stating that an acknowledgment or promise made before the statute has run vitalizes the old debt for another statutory period, dating from the time of the acknowledgment or promise, while an acknowledgment

365, 98 P. 1127 (1909); *Liberman v. Gurensky*, 27 Wash. 410, 67 P. 998 (1902).[5]

The next decision to reach the issue in Washington was *Griffin v. Lear, supra.* Yet, the writings reviewed by the *Griffin* court, which acknowledged the debt owed, took place within the 6–year statutory period. Thus, that part of the opinion dealing with acknowledgments after the statutory period had run was dicta.[6]

In *Tucker v. Guerrier,* 170 Wash. 165, 15 P.2d 936 (1932), a 3–year statute of limitations had already run on an account for lumber. Some 2 years after the running of the statute the debtor acknowledged that the statement óf his account was correct. The court stated that the purported writing was a mere acknowledgment of the amount owed and contained nothing in the nature of a promise to pay, nor could a promise to pay be inferred. The *Tucker* opinion seems to assert that once an acknowledgment is made, even though the statutory period has run, a promise

made after the statute has run gives a new cause of action, for which the old debt is a consideration. However, the *Prosser* opinion does not state that acknowledgments made after the statute has run should be more strictly construed or that both an acknowledgment and a promise are needed to revitalize the already existing debt once the statute has run.

[5]It is interesting to note that the court in *Bank of Montreal v. Guse, supra,* denominated the *Liberman* holding which stated that a "mere" acknowledgment of a debt was insufficient to remove the case from the statute as being an "extreme statement." Rather, the *Bank of Montreal* court adopted a more moderate rule which states at pages 370–71:

> [W]here acknowledgment alone is relied upon, the expression of the acknowledgment must be clear and unequivocal and made with reference to a particular debt which is subsisting at the time. The acknowledgment must be so clear that a promise to pay must necessarily be implied.

The *Bank of Montreal* decision does not discuss whether or not the various acknowledgments occurred before or after the statutory period had run, and we can only surmise that the issue was not presented or that the distinction was not fully recognized at the time.

[6]We note that Justice Bridges, writing for the majority in *Griffin,* was not altogether sure of his recital of the distinction, because he later stated that even if the rule were the same with regard to acknowledgments occurring before or after the running of the statute, the letters under review expressed both an acknowledgment and a promise to pay.

to pay may be inferred or implied from that acknowledgment.

Our review of the case law in this jurisdiction indicates that the distinction between acknowledgments made before and after the statutory period has run is well entrenched. What is mystifying about the present state of the distinction is the fact that it is premised upon an artificial base. The statute itself merely mandates that *either* a promise *or* an acknowledgment occur to revive the remedy, even though the contract may be a new or a continuing one.[7]

Turning now to the facts of the present case, we find that even if the distinction previously discussed is adhered to by this court, the letter of April 12, 1971, sufficiently acknowledges the debt owed and evidences both an express promise and an implied intention to repay the debt. Accordingly, the writing takes the case out of the statute of limitations.

Affirmed.

CALLOW, J., concurs.

WILLIAMS, J. (concurring)—Although I concur in the result, I do not find a promise to pay either expressed or implied in the Mottola letter which is the only evidence on

---

[7]A continuing contract is said to result when an acknowledgment or promise occurs before the statute runs. In this situation, the new promise evidences the original or existing liability and fixes a new date from which the statute runs. *Cannavina v. Poston, supra; Griffin v. Lear, supra.* A new contract is said to result when an acknowledgment or promise is made after the statutory period has ended. Under these circumstances, the suit is based upon the new pronouncement which must contain the elements of a contract—an acknowledgment of the debt and a promise to pay. The difficulty with this latter proposition is that there is no consideration for the "new" contract. The courts, however, have solved this problem by stating that the original debt is generally considered to be sufficient legal consideration for a subsequent new promise to pay the debt. Yet, it is the general rule in this state, as elsewhere, that the statute of limitations does not extinguish the debt itself; it only bars the remedy. If this is so, then the original contract of liability would be a continuing one for as long as the obligation remains unpaid. Thus, all that would be necessary to revive the original contract and take it out of the statute of limitations would be either a promise to pay or an acknowledgment that the debt is owing. No "new" contract ever arises. *See Joseph v. Darrar,* 93 Idaho 762, 472 P.2d 328 (1970).

the point. Rather, I see an acknowledgment of the debt with an attempt to pay it by transferring a credit owed to the Mottolas by a third party. Because of the confusion in the case law, I would simply affirm on the basis that the Mottolas acknowledged the debt in writing which is all that RCW 4.16.280 requires to lift the bar of the statute of limitations.

Petition for rehearing denied September 28, 1977.