[No. 17498.   Department One.   January 19, 1923.]

JULIA H. GRIFFIN, *Respondent*, v. HARRY B. LEAR,
     *as Executor etc., Appellant.*[1]

EVIDENCE (174)—PAROL EVIDENCE TO VARY WRITING—CONSTRUCTION OF CONTRACT—AMBIGUITY. Oral evidence is admissible that a check for $1,600 reciting: "to invest Wenatchee Orchard Co. until called. 10% guaranteed," was given after consultation and upon an agreement to invest in a company of the payee who agreed to see that the money was returned, to show the conditions surrounding its execution and to explain the ambiguous portions thereof.

CONTRACTS (6, 84)—OFFER AND ACCEPTANCE—CONSTRUCTION—LOAN OR ADVANCEMENT—PROMISE TO REPAY. The acceptance and endorsement of a check for $1,600, reciting: "to invest Wenatchee Orchard Co. until called. 10% guaranteed," together with oral evidence that the payee agreed to make an investment in a corporation controlled by her and assured repayment, is amply sufficient to show a binding obligation to repay upon demand.

SAME (28)—EVIDENCE OF AGREEMENT—PARTY BOUND. Such an obligation is the obligation of the payee and not of the corporation controlled by the payee.

[1]Reported in 212 Pac. 271.

LIMITATION OF ACTIONS (69)—REMOVAL OF BAR—NEW PROMISE TO PAY DEBT—SUFFICIENCY. A letter from a debtor stating that she can only "promise to pay the $1,600 with interest in some future time. You will never lose through me," is a definite and positive acknowledgment of the debt with an implied promise to pay, and where made before the statute of limitations has run, is not a new substantive promise, but evidences an existing obligation and fixes a new date from which the statute runs.

. SAME (69). Such an acknowledgment is sufficient to toll the statute of limitations although it contains no express promise to repay.

SAME (69)—REMOVAL OF BAR—NEW PROMISE TO PAY DEBT—SUFFICIENCY. Three letters, in answer to demands for payment, referring to a debt of "$1,600, with interest" stating that the writer could only promise to pay at some future time, that "You will never lose through me," and can pay "yourself from rents," are sufficient as an acknowledgment of the debt, or as a new promise, in case the statute had already run.

LIMITATION OF ACTIONS (69)—REMOVAL OF BAR—NEW PROMISE— IDENTITY OF DEBT—CONSTRUCTION OF WRITINGS. Such an acknowledgment sufficiently identifies the debt where it expressly refers to the $1,600 and the letter was in answer to a demand for the payment of that particular $1,600, the rule being that a writing before the running of the statute is not to be so strictly construed as an acknowledgment after the statute has run.

INTEREST (17)—STIPULATIONS—STATEMENT OF RATE. An acknowledgment of debt, before the statute of limitations has run, expressly referring to the "$1,600 and interest," which the original obligation fixed at 10%, authorizes a recovery with interest at that rate rather than at the legal rate.

WITNESSES (41-1) — COMPETENCY — TRANSACTION WITH PERSON SINCE DECEASED. In an action by a married woman on a claim against an estate, to recover money loaned as her sole and separate property, her husband is competent to testify as to the transaction she had with the deceased.

Appeal from a judgment of the superior court for King county, Smith, J., entered March 20, 1922, upon findings in favor of the plaintiff, in an action to enforce a claim against the estate of a deceased, tried to the court. Affirmed.

*Poe & Falknor* and *H. A. M. Bonnar,* for appellant.
*Carroll Hendron,* for respondent.

BRIDGES, J.—On and prior to April 17, 1911, the
plaintiff, Mrs. Griffin, and Mrs. Julia A. Underwood
(now deceased) were intimate friends and business
associates.    Together they owned and operated an
apartment house in the city of Seattle on which there
was a mortgage for $3,200.    Mrs. Underwood had
previously become deeply interested in, and together
with other associates had purchased, a tract of or-
chard lands located near the city of Wenatchee.    A
small portion of the purchase price was paid down
and a large mortgage given to secure the deferred
payments.    These lands were subsequently conveyed
to the Seattle-Wenatchee Orchard Company, a corp-
oration under the laws of the state of Washington.
Mrs. Underwood was the chief stockholder and officer
and the controlling spirit of this company.    The plan
was to sell so-called units of profit in the company for
the purpose of raising money.    The orchard was for
that purpose divided into 2,000 units.    The purchaser
of units was not to become a stockholder, but was to
be entitled to certain profits which the company might
make.    On the date first mentioned, Mrs. Griffin had
some $1,600 which she desired to put at work, either
in some safe investment or drawing interest.    Mrs.
Underwood had asked her to invest this money in the
units above mentioned.    After some discussion with
her husband, who advised against the investment, Mrs.
Griffin made out the usual check and together with
her husband, took it to Mrs. Underwood, where a dis-
cussion arose as to the advisability of the investment,
and then Mrs. Underwood assured them that she
would see that the money was returned.    At that

time, and before the check was delivered, additional words were written on it, so that when it was delivered it read as follows:

"Seattle, Wash., April 17, 1911.

"Pay to the order of Julia A. Underwood $1,600, sixteen hundred dollars, to invest Wenatchee Orchard Co. until called. 10% guaranteed."

Thereafter Mrs. Underwood cashed the check by endorsing her name on the back thereof. Shortly after that, some of the unit certificates were issued by the company and mailed and delivered to Mrs. Griffin. The company was unable to sell any considerable amount of its units and its mortgage on the orchard lands was soon foreclosed and the company lost all of its property. By this time Mrs. Griffin was pressing Mrs. Underwood for her money. On September 17, 1915, Mrs. Underwood wrote Mrs. Griffin as follows:

"I can only promise to pay the $1,600 with interest in some future time. You will never lose through me."

And again, but on a date which is not certain but probably during 1916, Mrs. Underwood wrote Mrs. Griffin:

"I cannot give more definite assurances than I have to Mr. Griffin, you have full liberty to pay yourself from the rents. I think the armistice will be signed soon, and Mr. Hartman (who was also interested in the orchard lands) will return. Will try and adjust the matter then."

And again, under date of May 13, 1917, she wrote Mrs. Griffin:

"I am in no position to pay you now. I will say again you will never lose through me whether Mr. Hartman settles or not, I will take care of your interest some way. I have not denied that you gave me the $1,600."

Mrs. Underwood died, a resident of the city of Seattle, on May 26, 1921.   Shortly thereafter the appellant was appointed executor of the estate, and a claim made by Mrs. Griffin for the $1,600 and interest was disallowed, and she commenced this suit on September 12, 1921.   There was a judgment in her favor for $3,192, which amount represents the $1,600, plus ten per cent interest from the date of the check above mentioned.

The appellant contends that the check given by Mrs. Griffin to Mrs. Underwood is insufficient as a writing to evidence any indebtedness, for the reason that it is too meagre, incomplete and informal, and that no right of action can be based thereupon, and that the oral testimony tending to prove that Mrs. Underwood agreed to repay the $1,600 with interest was improperly received because the debt, if any, was that of the corporation, and an oral agreement concerning it would violate the statute which requires that an undertaking to pay the debt of another is void unless in writing.   It is further contended that, if the oral agreement was sufficient upon which recovery might ordinarily be made, it is controlled by the three-year statute of limitations, and that, if the writing itself be otherwise sufficient to sustain a recovery, it is controlled by the six-year statute of limitations; and that, in either event, the claim is long since outlawed, and that the letters which we have quoted are insufficient to stay the running of the statute or to create a new indebtedness on which recovery may be had.

It is plain to us that the writing constituting the check made by Mrs. Griffin was sufficient upon which to base a right of recovery.   In construing this instrument we must take into consideration the circumstances, as shown by the oral testimony, surrounding

its execution and which led to the writing in the check the words "to invest in Wenatchee Orchard Co. until called, 10% int. guaranteed." It is contended that this oral testimony was inadmissible because it tended to vary or alter the terms of the writing. We cannot so consider it. It has always been held that testimony may be properly received showing the circumstances and conditions surrounding the execution of a written instrument, not for the purpose of modifying, varying or adding to that instrument, but for the purpose of assisting in construing the writing and giving light to any ambiguous portions thereof. The oral testimony in this case went no farther than we have indicated. The check plainly shows that Mrs. Griffin was paying to Mrs. Underwood $1,600 to invest in the Wenatchee Orchard Company until such time as the money should be demanded by Mrs. Griffin, at which time the principal should be returned by Mrs. Underwood with interest at ten per cent. The letters written by Mrs. Underwood, if they show anything at all, show that it was her distinct understanding that she would repay this money, with interest, whenever a demand therefor was made, and admit her liability therefor.

Some contention is made by appellant that the testimony fails to show who wrote in the check the words "to invest in Wenatchee Orchard Co. until called, 10% int. guaranteed." While it may be admitted that the testimony leaves a doubt as to who did this writing, yet it does clearly show that it was done immediately before the check was delivered to Mrs. Underwood, and with her knowledge and before she got money thereon by endorsing it. Whoever may have written the words quoted is immaterial, because if Mrs. Underwood did not write them she adopted them. The acceptance of the check by Mrs. Underwood with her

signature on the back thereof is amply sufficient to make a contract binding upon her.

"A contract may be formed by accepting a paper containing terms. If an offer is made by delivering to another a paper containing the terms of the proposed contract, and the paper is accepted, the acceptor is bound by its terms." 13 C. J. 277.

Under all the circumstances shown here, we are clear that the writing was amply sufficient to form a binding obligation on Mrs. Underwood to repay the $1,600, with interest, on demand.

Nor can we agree with the contention that the obligation was on behalf of the orchards company and that it alone is liable. Both the writing and the oral testimony show that it was Mrs. Underwood who was to stand liable for the return of the money.

It is contended, however, that since this writing was made April 17, 1911, it became outlawed six years from that date, and that the letters written by Mrs. Underwood are wholly insufficient to stay the bar of the statute or to remove the bar if it had already occurred. We are confident that they are amply sufficient for either purpose. Section 176, Rem. Comp. Stat., says:

"No acknowledgment or promise shall be sufficient evidence of a new or continuing contract whereby to take the case out of the operation of this chapter, unless the same is contained in some writing signed by the party to be charged thereby; but this section shall not alter the effect of any payment of principal or interest."

By the letter of September 17, 1915, which was well within six years after the writing of the check, and less than six years before the suit was brought, Mrs. Underwood says: "I can only promise to pay the $1,600 with interest in some future time. You will·

never lose through me." This amounts to a definite, distinct and positive recognition or acknowledgment of the existence of the debt, together with the interest, with at least an implied promise to pay it. The authorities are not in unison as to just what requirements a writing must have in order to stay the running of the statute or to remove its bar. In all instances where the writing acknowledges the debt before the statute has run, the right of action must be on the original debt, and when the writing is made after the statute has run, the action must be on the new undertaking. In 17 R. C. L., p. 895, the rule is laid down as follows:

"A new promise, made before a debt is barred by the statute of limitations, is held not to create a new and substantive contract, but to be merely evidence of an existing liability, and to fix a new date from which the statute runs."

Mr. Wood, in his work on Limitations, vol. 1, p. 432 (4th ed.), says:

"An acknowledgment or promise made before the statute has run vitalizes the old debt for another statutory period dating from the time of the acknowledgment or promise, while an acknowledgment made after the statute has run gives a new cause of action, for which the old debt is a consideration."

In the case of *Southern Pac. Co. v. Prosser*, 122 Cal. 413, 52 Pac. 846, 55 Pac. 145, it is said:

"When a debtor makes a new promise before an action is barred upon the original contract, he does not make himself liable a second time for the same debt, and the old promise is not merged in the new; he merely continues his original liability for a longer term. In other words, he merely waives so much of the period of limitations as has run in his favor. But when his legal obligation is at an end by reason of the lapse of the full period of limitations or of a discharge

in bankruptcy, the new promise creates a new obligation and is itself the basis of the action." ·

See, also, Ann. Cas. 1912A 1; *Liberman v. Gurensky,* 27 Wash. 410, 67 Pac. 998.

This letter of September, 1915, unquestionably acknowledged the debt at a time before the statute of limitations had run. But it is said that this writing is fatally defective in that it does not expressly agree to pay the indebtedness. Such is not necessary. If one in writing acknowledges he owes a debt, the law will presume that he intends to pay it, unless there is something in the writing which shows a contrary intention. The correct rule is laid down in 17 R. C. L., at page 889, as follows:

"It is a general rule that a new promise to pay a debt or an unqualified acknowledgment of a debt from which a promise to pay may be implied will take the case out of the statute where it is not coupled with any refusal to pay or accompanied by any circumstances such as repel the inference to leave it in doubt whether the person intended to prolong the time of legal limitation even though there is no express promise on the part of the debtor."

See, also, page 897 of the same volume.

In the first volume of Wood on Limitations (4th ed.), p. 436, the rule is stated in these words:

"In order to toll the statute of limitations, the debtor must, within the statutory period, expressly promise to pay the obligation, or acknowledge it as an existing debt. It is not necessary that both an admission of the debt and a new promise to pay shall be made and signed by the party; but either is sufficient."

This court has recognized this doctrine in *Bank of Montreal v. Guse,* 51 Wash. 365, 98 Pac. 1127, by saying:

"The acknowledgment must be so clear that a promise to pay must necessarily be implied."

But it is argued that the letters are insufficient because they fail to certainly identify the debt sued for. At least one of the letters refers to the $1,600. But it is said that this may refer to half of the $3,200 mortgage which was on the apartment house. The testimony clearly shows that each of the letters quoted was in answer to letters which Mrs. Griffin had written to Mrs. Underwood demanding payment of this particular $1,600. If the letters in themselves might be considered indefinite in this regard, this oral testimony certainly makes them clear. A writing acknowledging a debt which has already been barred ought to be construed much more strictly than a writing acknowledging a debt against which the statute has not run. In the latter instance the original debt is acknowledged and the action must be upon it or upon the paper evidencing it, and under those circumstances it would seem that any acknowledgment of the debt ought to necessarily infer an agreement to pay it, unless there is something in the acknowledgment which leads to a necessarily contrary conclusion. But where the acknowledgment is made after the statute has already run, the action must be upon the new agreement, consequently it is in the nature of an original obligation and should be strictly construed. The debt being barred, it is possible that one may acknowledge it without intending to pay it. If this distinction is kept in mind most of the apparent inconsistencies in the cases will be cleared up. Probably the leading case on this question is *Southern Pac. Co. v. Prosser, supra.* But should it be considered that the rule is the same whether the acknowledgment be before or after the running of the statute, the three

letters, read together and considered in the light of the circumstances under which they were written, show plainly that Mrs. Underwood not only recognized this particular indebtedness, but agreed to pay it, together with the interest thereon. Courts should bend their efforts in cases of this character to learn what was the intention of the party writing the acknowledgment which it is claimed tolls the statute and should not be quick to find technical rules which might defeat such intention. We think these letters are amply sufficient to stop the running of the statute or to create a new obligation and promise to pay, if the statute be considered as having already run.

But it is contended that, in any event, the rate of interest should not exceed six per cent instead of ten per cent, as mentioned in the check. If all the letters had been written after the bar created by the statute, then we might be disposed to hold that they recognize and agree to pay only the $1,600, together with the legal rate of interest, because there is nothing in the letters agreeing to pay any definite amount of interest. But the letter of September 17, 1915, was written before the statute had run and its effect would be to acknowledge the original indebtedness with such amount of interest as originally went with that indebtedness. In addition to this, that letter expressly refers to the interest, and since the original debt was evidenced by the check which called for ten per cent interest, we must hold that recovery can be had on the original check carrying ten per cent interest. We have not failed to make a careful reading of all our own cases which have been cited by the appellant, but they are not controlling. The written acknowledgments in those letters are very different from those in this case. Each case must stand or fall on its

own writing. We believe it would not serve any useful purpose to here further review those cases than to cite them and say that all or nearly all of them were based on acknowledgments which were made after the statute had run. *Liberman v. Gurensky, supra*; *Bank of Montreal v. Guse, supra*; *Thisler v. Stephenson,* 54 Wash. 605, 103 Pac. 987; *Coe v. Rosene,* 66 Wash. 73, 118 Pac. 881, Ann. Cas. 1913C 741, 38 L. R. A. (N. S.) 577; *Ingalls v. Angell,* 76 Wash. 692, 137 Pac. 309.

The last assignment of error raises the question of the admissibility of the testimony of the husband of the plaintiff. He was permitted to testify concerning certain conversation and transactions had with the deceased, Mrs. Underwood. The testimony shows clearly to our mind that the $1,600 in question here was the sole and separate property of Mrs. Griffin. Under the rule in the case of *Showalter v. Spangler,* 93 Wash. 326, 160 Pac. 1032, the husband is permitted to testify under circumstances such as shown here. But should we conclude that it was erroneous to allow Mr. Griffin to testify concerning these matters, the conclusion to which we have come would not be changed. Such portions of his testimony as might be objected to for the reasons mentioned were of little importance, and the error, if any, was without prejudice.

The judgment is affirmed.

PARKER, MACKINTOSH, HOLCOMB, and MITCHELL, JJ., concur.