[No. 28555. Department Two. April 9, 1942.]

D. CANNAVINA *et al., Respondents,* v. HARRY POSTON *et al., Appellants.*[1]

[1] Reported in 124 P. (2d) 787.

*Bates & Burnett,* for appellants.

*Clyde W. Linville, Jr.,* for respondents.

JEFFERS, J.—This action was instituted by D. Cannavina and wife, in the superior court for Skamania county, against Harry Poston and wife, to quiet plaintiffs' title to certain real estate. The complaint, which was sworn to on September 7, 1940, and filed September 11, 1940, alleged in substance as follows: That on April 13, 1933, plaintiffs, for the purpose of securing the payment to defendant Harry Poston of the sum of four thousand dollars and interest, made, executed, and delivered to defendant their promissory note for four thousand dollars and, to secure such note, a real estate mortgage on land in Skamania county, as described in the complaint, to which land plaintiffs at all times held the fee simple title; that the note became due and payable on April 13, 1934; that the note has not been extended or renewed, and no action has been commenced upon the note or mortgage; that more than six years have elapsed since the accrual of a cause of action based upon the note and mortgage, and any action thereon is now barred by the statute of limitations; that the mortgage was duly recorded on April 17, 1933, in the office of the auditor of Skamania county, and still remains of record and is a cloud upon plaintiffs' title.

It may be stated here that, while the above note was for four thousand dollars, it is admitted that the amount borrowed by plaintiffs was two thousand dollars, and the case was tried and decided as though the note and mortgage had originally been written for

two thousand dollars. No bad faith was imputed to any of the parties.

Defendants appeared in the action, and in their answer admitted the execution of the note and mortgage, denied that the statute of limitations had run against the note, and by way of cross-complaint alleged a payment of one hundred fifty dollars on the note on August 15, 1935, which was credited on interest, and that defendants are the owners of the note and mortgage. Defendants asked for judgment on their note and the foreclosure of the mortgage given to secure it.

Plaintiffs replied to defendants' cross-complaint, and denied that any payments had been made on the note and mortgage since April 13, 1933. Before trial, defendants were permitted to amend their cross-complaint by a recital to the effect that, within six years next preceding the filing of the cross-complaint, there had been a written acknowledgment of the indebtedness by plaintiffs. This new matter was denied by plaintiffs, and upon these issues the case went to trial before the court. The court made the following findings of fact:

"2. That the plaintiffs are now, and at all times material to this action were, the owners in fee simple of the following described real property, to-wit:

"The South Half of the Southeast Quarter, the South Half of the Northeast Quarter of the Southeast Quarter, and the South Half of the Northwest Quarter of the Northeast Quarter of the Southeast Quarter of Section Ten, Township Four North, Range Seven East W. M., containing 105 acres, more or less;

"And the Northeast Quarter, the North Half of the Southeast Quarter, the North Half of the Southeast Quarter of the Southeast Quarter, the North Half of the South Half of the Southeast Quarter of the Southeast Quarter, and Tax Lot No. 1 of Section Fifteen, Township Four North, Range Seven East W. M.,

containing 313 acres, more or less, and all lying and being situated in Skamania County, State of Washington.

"3. That on the 13th day of April, 1933, the plaintiffs then being indebted to the defendant Harry Poston in the sum of $2000.00, made and delivered to said defendant their promissory note in evidence thereof, secured by a mortgage upon the above described real property. That for reasons not material to this cause of action, and in no way imputing lack of good faith to any of said parties the principal amount of said note was shown as $4000.00; and it was mutually recognized and understood between the parties that the principal amount due on said note was only $2000.00. That said note and mortgage became due and payable on the 13th day of April, 1934.

"4. That said mortgage is now of record in Book 'T' of Mortgages, at page 227, Records of Skamania County, Washington.

"5. That no payments of either principal or interest have been made or tendered upon said note, and mortgage by the plaintiffs or either of them; and that said note and mortgage have not been extended or renewed.

"6. That no action has been commenced upon or touching said note and mortgage or either of them, other than this action.

"7. That this cause of action was commenced on the 11th day of September, 1940, and more than six (6) years after the accrual of a cause of action upon said note and mortgage.

"8. That no offer or payment or other equity was made by the plaintiffs unless as contained in Exhibits 3, 4, 5 and 6 herein."

From the foregoing findings of fact, the court concluded:

"2. That the mortgage made and delivered by the plaintiffs to the defendant Harry Poston and as of record in Book 'T' of Mortgages at page 227, records of Skamania county, Washington, is now barred by the statute of limitations of the state of Washington.

"3. That the plaintiffs are entitled to judgment of this court dismissing the defendants cross-complaint, with prejudice.

"4. That the plaintiffs are entitled to judgment of this court ordering the defendants to cancel and satisfy the above described mortgage record.

"5. That the plaintiffs are entitled to judgment of this court quieting their title to the above described real property against all claims or demands of the defendants or either of them and all persons claiming under them; and adjudging that the defendants nor either of them have any right, title, claim, interest, estate or lien in or upon the above described real property or any part thereof."

Judgment was entered in accordance with the conclusions of law, and this appeal by defendants followed.

The assignments of error are:

"1. In making and entering a judgment quieting respondents' title as against the lien of appellants' mortgage and in denying to appellants the foreclosure thereof;

"2. In holding that the Cannavina letter dated October 9, 1935, was not a sufficient acknowledgment in writing of an existing indebtedness under the provisions of § 176, Rem. Rev. Stat., so as to renew the running of the statute of limitations;

"3. In holding that defendants' exhibits 3, 4 and 5 were not signed by Cannavina within the meaning of § 176, Rem. Rev. Stat.;

"4. In holding that § 785-1, Rem. Rev. Stat., created a new cause of action;

"5. In refusing to hold that a payment had been made upon appellants' note and mortgage within six years next prior to the bringing of this action."

The ultimate question to be decided in this case is whether or not the six year statute of limitations has run against the note and mortgage, which admittedly became due and payable on April 13, 1934.

It may be admitted that the facts as found by the trial court in findings Nos. 2, 3, 4, and 6 are amply supported by the evidence, and it is not contended otherwise by any of the parties hereto.

We shall first discuss assignment of error No. 5. Appellants contend that there was a payment by respondents upon the note and mortgage, which tolled the statute of limitations so that, when respondents' action was commenced, the note and mortgage were not barred. The trial court found that no payment of either principal or interest had been made or tendered upon the note and mortgage by appellants, or either of them. In its memorandum opinion, the trial court made the following statement in regard to the question of payment and in regard to Mr. Cannavina and Dr. Poston, who testified relative to this matter:

"These gentlemen both seem honorable gentlemen, but analysis of this testimony with reference to the payment of the fifty dollars and the credit of a hundred dollars leaves my mind in a state of equilibrium and I am compelled to the position that defendant [Poston] has not sustained the burden of proof as to the question of fact."

While we have long recognized the rule in this state that a plea of the statute of limitations is not an unconscionable defense, we have also recognized and so stated that it is "not such a meritorious defense that either the law or the facts should be strained in aid of it." *Bain v. Wallace,* 167 Wash. 583, 10 P. (2d) 226, and cases therein cited.

Respondents at the present time and for some years last past have lived in Skamania county, Washington, where they owned considerable land in what is referred to as the "Wind River" section. Appellant Harry Poston is a doctor, and at all times herein mentioned lived in Pasadena, California. It does not appear on what occasion or just when these parties first

met, but it does appear that the doctor and respondents had been friends for a good many years, and that for some years the doctor had spent some time each year at respondents' place.

In about 1931, the doctor built, or had built, a cabin on respondents' land, and thereafter, on his trips to Washington, the doctor spent part of his time in the cabin and part at respondents' home. It is not contended but that the cabin was built with respondents' permission. At the time the cabin was built, the land on which it was located had not been subdivided. In April, 1933, the note and mortgage were given, the mortgage covering the land upon which the cabin was located and other land. In 1934, respondents subdivided part of their land, and appellants, apparently without any consideration, released from their mortgage the land subdivided. It is admitted that no part of the principal sum of the note has been paid, and respondents contend that no payments of either principal or interest have been made. The note carries an endorsement on the back of a payment of one hundred and fifty dollars, August 15, 1935, applied on interest.

Dr. Poston testified that he visited respondents in the late summer of 1935, and while on this visit asked Mr. Cannavina to make a payment on the note. One day while Mr. Cannavina and Dr. Poston were at Carson, a small village near respondents' home, to have the doctor's car serviced, Mr. Cannavina gave him fifty dollars of the one hundred fifty dollars above referred to. The additional one hundred dollars for which credit was given, represented, according to the testimony of Dr. Poston, the agreed value of the lot upon which the cabin stood, and for which a deed was given by respondents and filed by them for record on October 9, 1935. The doctor further testified that he did not have the note or mortgage with him

on this visit, and so did not make the endorsement until he returned to Pasadena.

As we have stated, Mr. Cannavina denied making any payment to Dr. Poston, as testified to by him, or at all, and testified that the doctor was not at his place on August 15th. It being called to the attention of the doctor that a son of respondents, who had been fatally injured, was buried on August 15th, at which time the doctor wired flowers from Pasadena, Dr. Poston corrected his testimony to the effect that it was shortly after this boy's death that he came up to Washington. There seems to be no question but that the doctor did come up either the latter part of August or the first of September. Of course, so far as the time element is concerned, it would make no difference in this case whether the payment was made in August or September, as the note had nearly five years to run from either date before the statute would have run against it.

Mr. Cannavina testified that the lot was a gift to Dr. Poston, and that he had always intended to make a deed to the lot and give it to Dr. Poston, but that he could not do this until after the land was subdivided and a description of the lot upon which the cabin stood could be obtained. He denied that it was ever agreed that Dr. Poston was to give him credit for one hundred dollars on the note in payment of the lot.

We call attention to the fact that, although it was possible to have given a deed to this lot in 1934, respondents did not give the deed until October, 1935, which was after Dr. Poston's visit, at which time the doctor testified it was agreed that the deed would be given, and credit for one hundred dollars allowed on the note.

It may be admitted that, when reliance is placed upon a part payment to remove the bar of the

statute, and payment is denied, the burden of proving the payment within the statutory time rests upon the party asserting it. It is the fact of partial payment, and not the formal entry of credit, which tolls the statute. Creditors will not be permitted to defeat the statute by making belated credits. *Arthur & Co. v. Burke,* 83 Wash. 690, 145 Pac. 974. The endorsement, by the holder of a note, of a payment thereon is not competent evidence of the true date of payment, so as to take it out of the operation of the statute. *Arthur & Co. v. Burke, supra.*

With the above rules in mind, and after a careful consideration of the record, we are of the opinion that the facts fairly preponderate in favor of appellants' contention that the payment of one hundred and fifty dollars was made either the latter part of August or first part of September, 1935.

Having in mind that the time this payment was made was long before the statute had run against the note, and was not a case of a claimed payment made and credit given on the last day the statute had to run, and considering the interest of the parties to this litigation, we are unable to reach any conclusion other than that the payment was made as testified to by Dr. Poston. The entire record bears out the fact that the doctor was most lenient with respondents and never pressed them for payment of this obligation, other than to ask that a payment be made on the note. It seems to us this is a case where the facts should not be strained in aid of the statute. Respondents admit that no payments have ever been made on the principal, and make no claim of any defense to the note or mortgage, other than the statute of limitations.

It being admitted that, if no payments had been made, the note would have outlawed April 13, 1940, it follows that, a payment having been made the lat-

ter part of August or the first of September, 1935, this action, based upon the statute of limitations, was prematurely brought, in so far as respondents' cause of action is concerned.

It is next contended by appellants that there was a written acknowledgment of the indebtedness sued upon, sufficient to toll the statute. Four letters are relied upon by appellants to establish this contention. These letters were admitted in evidence over the objection of respondents, as defendants' exhibits Nos. 3, 4, 5, and 6. Exhibits three and four were signed by Skamania County Abstract & Title Co., Raymond C. Sly, president. These two letters were written to appellant Harry P. Poston, at Pasadena, on March 12, 1940. Exhibit five was written by Raymond C. Sly, to George S. Carter, attorney for appellants, on March 22, 1940. It is admitted that the three letters above mentioned were written at the direction of respondent D. Cannavina, and appellants contend such letters should be considered the same as though they had been signed by respondent himself.

Respondents contend that these letters should not be considered, because they were not signed by Mr. Cannavina, and hence did not meet the requirements of Rem. Rev. Stat., § 176 [P. C. § 8183], which provides:

"No acknowledgment or promise shall be sufficient evidence of a new or continuing contract whereby to take the case out of the operation of this chapter, unless the same is contained in some writing signed by the party to be charged thereby; but this section shall not alter the effect of any payment of principal or interest."

Respondents also contend that even if such letters were admissible, still they did not contain a sufficient acknowledgment of the indebtedness to take the case out of the statute.

We do not deem it necessary to discuss the question raised relative to the three letters above referred to, in view of the fact that we have before us in exhibit six a letter signed by respondent D. Cannavina himself, and which, in our opinion, contains a sufficient acknowledgment of the indebtedness to toll the running of the statute. Exhibit six is as follows:

"Carson, Washington
"October 9, 1935.

"Dr. H. P. Poston
"65 N. Madison Avenue
"Pasadena, California.
"Dear Harry:

"I have been pretty busy working since you left here and I didn't have time to write you. We are all well and hope you the same. I heard through Nick that you had a wonderful time while you was on your vacation.

"Now regard the land. Will make you proposition which I think is very reasonable. I will make you deed for about 225 acres of land as described on the map with the red pencil which I am sending to you and I would like to have it back. The property marked is described as follows:

"The SW ¼ of SE ¼ of Sec. 10; the N ½ of NE ¼ of Sec. 15; the SE ¼ of NE ¼ of Sec. 15; the NE ¼ of SE ¼ of Sec. 15 and that part of the NW ¼ of NE ¼ of Sec. 15 lying north of the county road, all in Township 3 North Range 8 East Willamette Meridian.

"Now this land includes fifteen or twenty acres clear next to Simpson and also the big creek goes right through this land with springs etc., and we will call it even for which I owe you.

"Please answer at once and have you an idea when Nick is going to come?

"Best regards from my wife and me to yourself and daughter and our friends.

"Yours truly
"(Signature) D. CANNAVINA

"DC:RG
"Encl. Map.

"P. S. Am enclosing clipping from 'Skamania County Pioneer' about the new fish hatchery to be erected on the Government Springs road. Have made deed for Lot 7, having it recorded and will mail it to you in a few days."

It will be noticed that exhibit six was written long before the statute of limitations had run. It may also be stated here that respondents made no claim that there was any indebtedness owing by them to appellants other than the two thousand dollars evidenced by the note and mortgage, and it appears conclusively there was no other indebtedness, so we are of the opinion it must be admitted that appellant, in his letter of October 9, 1935 (exhibit six), was referring to the two thousand dollars owed by respondents to appellants.

At this point it might be well to consider the rule in this state, which is in accord with the weight of authority, as to acknowledgments made before the statute has run, as distinguished from those made after the statute has run, and the reason for such rules.

In the case of *Griffin v. Lear,* 123 Wash. 191, 212 Pac. 271, certain letters written before the statute of limitations had run were relied upon to establish a written acknowledgment of the indebtedness sufficient to toll the statute, and we stated:

"In all instances where the writing acknowledges the debt before the statute has run, the right of action must be on the original debt, and when the writing is made after the statute has run, the action must be on the new undertaking. In 17 R. C. L., p. 895, the rule is laid down as follows:

" 'A new promise, made before a debt is barred by the statute of limitations, is held not to create a new and substantive contract, but to be merely evidence of an existing liability, and to fix a new date from which the statute runs.'

"Mr. Wood, in his work on Limitations, vol. 1, p. 432 (4th ed.), says:

" 'An acknowledgment or promise made before the statute has run vitalizes the old debt for another statutory period dating from the time of the acknowledgment or promise, while an acknowledgment made after the statute has run gives a new cause of action, for which the old debt is a consideration.' "

In regard to whether or not there must be an express promise by the debtor to pay, we quote further from the cited case:

"But it is said that this writing is fatally defective in that it does not expressly agree to pay the indebtedness. Such is not necessary. If one in writing acknowledges he owes a debt, the law will presume that he intends to pay it, *unless there is something in the writing which shows a contrary intention.* The correct rule is laid down in 17 R. C. L., at page 889, as follows:

" 'It is a general rule that a new promise to pay a debt or an unqualified acknowledgment of a debt from which a promise to pay may be implied will take the case out of the statute where it is not coupled with any *refusal to pay* or accompanied by any circumstances such as repel the inference to leave it in doubt whether the person intended to prolong the time of legal limitation even though there is no express promise on the part of the debtor.' "   (Italics ours.)

To the same effect is Wood on Limitations (4th ed.), vol. 1, p. 436.

In the cited case, we further stated:

"A writing acknowledging a debt which has already been barred ought to be construed much more strictly than a writing acknowledging a debt against which the statute has not run. In the latter instance the original debt is acknowledged and the action must be upon it or upon the paper evidencing it, and under those circumstances it would seem *that any acknowledgment of the debt ought to necessarily infer an agreement to pay it,* unless there is something in the acknowledgment which leads to a necessarily contrary conclusion.

If this distinction is kept in mind most of the apparent inconsistencies in the cases will be cleared up." (Italics ours.)

■■ Respondents contend that the letter of October 9, 1935, is an offer of compromise, and as such is not a sufficient acknowledgment of the indebtedness to toll the running of the statute, citing 12 A. L. R. 544, and the following cases taken from that report: *Bates' v. Bates* (1858), 33 Ala. 102; *Mitchell v. Clay* (1852), 8 Tex. 443; *Riggs v. Roberts* (1881), 85 N. C. 151, 39 Am. Rep. 692.

In 12 A. L. R., *supra,* preceding the citations above referred to and many others, we find this general statement (p. 544):

"The present annotation does not include cases involving merely conditional offers to pay the debt, in which no element of compromise is present. It includes rather those cases in which the alleged debtor offers to settle for a smaller amount than that claimed, or to pay in something other than money, or in some other way to 'compromise' the claim, using that term in its commonly understood sense.

"Generally, the action has been on a claim which was barred by limitations unless the unaccepted offer of compromise was available to toll or remove the bar of the statute; and the court has held merely that the compromise offer was not such an acknowledgment of the indebtedness as would imply a promise to pay it, so as to have this effect."

The basic element of a compromise is a disputed claim. In 12 C. J. 316, § 6, under "Elements and Essentials," we find this statement:

"Rights or claims may be the subject of compromise, whether arising out of contract or tort; *but conflicting claims* are essential to the validity of a compromise, one of its essential elements being the existence of a bona fide dispute or controversy between the parties." (Italics ours.)

In volume 8, Words & Phrases (Perm. ed.), p. 311 *et seq.,* the citations all carry the thought that a "compromise" is an agreement between two or more persons to amicably settle their dispute.

It would seem to follow, then, that to have an offer of compromise, there must be an offer to settle a dispute. There is absolutely nothing in this record to show that there was, at the time of trial or ever, any dispute between the parties to this suit as to the amount due from respondents to appellants. Respondents made no contention that there was any indebtedness due from them other than the two thousand dollars evidenced by the note and mortgage, nor did they claim any offset to the note or claim to have any defense thereto other than the statute.

In *Mitchell v. Clay, supra,* cited by respondents, we find the following statement, which we think correctly states the general rule:

"The defendant not having shown that there was any other debt due from him to the plaintiff, his acknowledgment was to be taken to apply to the one in suit."

And so in the instant case we are convinced that there can be no question but that, when Cannavina, in his letter of October 9th, stated "and we will call it even for which I owe you," he had in mind and referred to the indebtedness of two thousand dollars represented by the note and mortgage, and no other.

While it is difficult to tell from the record whether the claimed acknowledgment in the case of *Bates' v. Bates, supra,* was made before or after the statute had run, in *Mitchell v. Clay, supra,* the claimed acknowledgment was after the statute had run, and in *Riggs v. Roberts, supra,* the claimed acknowledgment was made after the debt had been extinguished by bankruptcy.

The cited cases and others along the same line, in our opinion, do nothing more than bear out the statement made by this court that an acknowledgment of the indebtedness made after the statute has run will be much more strictly construed than one made before the statute has run. As sustaining our conclusion, we call attention to the case of *Rumsey v. Settle's Estate*, 120 Mich. 372, 79 N. W. 579, wherein certain letters were written before the statute of limitations had run, and it was claimed they constituted a sufficient acknowledgment of the debt to toll the statute. The court held the letters were sufficient to toll the statute, as they recognized the debt as a present obligation. The cited case is found in 12 A. L. R. 548, under the same general heading as the cases cited by respondents, to which we have referred.

We also desire at this point to again call attention to the case of *Griffin v. Lear, supra,* and to the second letter relied upon in the cited case to toll the statute:

" 'I cannot give more definite assurances than I have to Mr. Griffin, you have full liberty to pay yourself from the rents. I think the armistice will be signed soon, and Mr. Hartman (who was also interested in the orchard lands) will return. Will try and adjust the matter then.' "

In our opinion, there is nothing in the letter of October 9, 1935, which indicates any refusal on the part of respondents to pay the debt they owed appellants, but Mr. Cannavina merely offered to deed appellants certain land in payment of the debt which he acknowledged that he owed, which act we are of the opinion is sufficient to carry with it a promise to pay.

Whatever may be the holding of other courts relative to an offer to compromise, made after the statute of limitations has run, and without deciding whether or not in the instant case had the letter been written after the statute had run we would hold it was suf-

ficient to toll the statute, we are satisfied that, under this record, the letter of October 9th was a sufficient acknowledgment of the indebtedness owed by respondents to appellants to toll the statute, and that the trial court erred in holding to the contrary.

In view of the conclusion reached by us, we deem it unnecessary to pass upon the constitutionality of Rem. Rev. Stat. (Sup.), § 785-1 [P. C. § 7517-21], which appellants claim is the basis for respondents' plea of the statute of limitations in their action to quiet title.

The judgment of the trial court is reversed, and the cause is remanded with instructions to the trial court to enter judgment in favor of appellants, as prayed for in their cross-complaint.

ROBINSON, C. J., BEALS, BLAKE, and SIMPSON, JJ., concur.

[1]Reported in 124 P. (2d) 550.