[No. 1997–3.  Division Three.  March 15, 1978.]

JACK REA, *Appellant*, v. STELLA REA, *Individually and as Executrix, Respondent.*

*Edward S. Winskill* and *Davies, Pearson, Anderson, Seinfeld, Gadbow, Hayes & Johnson,* for appellant.

*Fred Shelton* and *Shelton & Hart,* for respondent.

McINTURFF, J.—Jack Rea appeals from a jury verdict in favor of the widow and estate of his deceased brother Ed in a suit to collect funds unpaid on a verbal loan agreement between the brothers.

The principal issues are (1) whether the court erred in submitting the issue of the statute of limitations to the jury and (2) whether the court erred in denying a motion for judgment notwithstanding the verdict.

No error is assigned to the instructions[1] on the grounds they misstated the law.[2] Instead, Jack's position is that the

---

[1]The pertinent instructions read:

Instruction No. 4: "An action upon an oral contract must be brought within three years from the time when a cause of action arises, that is, from the time when the holder thereof has the right to apply to the courts for relief. On a promise to pay money the cause of action arises when a debt becomes due and payable."

Instruction No. 5: "A promise to pay a debt upon the happening of a condition is due when the condition is substantially satisfied. If you find from the evidence, that the loan was to be paid when the equipment was sold, the debt would be due and payable when all of the equipment or substantially all of the equipment was sold."

Instruction No. 6: "When a payment is made upon a debt, under the circumstances which show a clear intention on the part of the debtor to make a payment on the loan, the three year limitation period begins to run again from the date that the part payment was made. Where reliance is placed upon such a part payment, the burden of proof that the payment was made by the debtor rests upon the party claiming that the part payment was made."

Instruction No. 7: "The present action by the plaintiff against the estate of Ed Rea was commenced January 13, 1975."

[2]Jack's counsel objected to the instructions only "for the reason that the Statute of Limitations issue, as a matter of law, should be removed from consideration by the jury."

court should have decided as a matter of law that his claim was brought within the applicable limitations period.[3] He first argues his brother's financial statements which acknowledged the existence of'the loan, and which were signed by Ed, constitute a writing sufficient to toll the operation of the statute.

The alleged loan was consummated in late 1969 and early 1970. Ed's financial statements to his Yakima bank for 1970 and 1971 contained an accountant's note, under "long–term debt," of a "loan payable to Jack Rea, unsecured, $52,476." The 1972 statement, which was not admitted despite strong objection by the estate, contains the note, "Ed Rea has ascertained the contingent liability to Jack Rea no longer exists and did not exist at December 31, 1971." The statements were signed by Ed and delivered to his bank. They were not communicated to Jack.

RCW 4.16.280 provides:

> No acknowledgement or promise shall be sufficient evidence of a new or continuing contract whereby to take the case out of the operation of this chapter, unless it is contained in some writing signed by the party to be charged thereby; but this section shall not alter the effect of any payment of principal or interest.

Washington decisions construing this statute, to determine whether a writing is a sufficient acknowledgement so as to remove the case from the statute, have varied.[4] However, the critical question presented—whether the writing must be communicated to the creditor—has only been addressed in *Addison v. Stafford,* 183 Wash. 313, 48 P.2d 202 (1935).

There the alleged acknowledgement was contained in affidavits supporting a woman's petition to the court to require her husband to pay the debt allegedly due. The

---

[3]The statutory limitations period on an oral agreement is 3 years. RCW 4.16.080(3).

[4]*See* Comment, "*The Written Acknowledgement: Its Effect on the Operation of the Statute of Limitations,*" 15 Wash. L. Rev. 112 (1940). *See also Cannavina v. Poston,* 13 Wn.2d 182, 194–96, 124 P.2d 787 (1942).

court held the acknowledgement insufficient to remove the case from the statute of limitations because of its failure to imply a promise to pay the debt and because it had not been communicated to the creditor. The court said at pages 315–16:

It seems to us that this [the acknowledgement] falls far short of being an acknowledgement from which a promise to pay must necessarily be implied. The appellant was not a party to the proceeding in which the affidavits were filed, and *there is nothing to indicate that it was the intention of the respondent that the contents thereof should be communicated to her. The affidavits were not a promise in writing addressed to the appellant.*

(Italics ours.) The court considered the rule requiring that the acknowledgement of a debt barred by the statute be communicated to the creditor so well established by modern authority[5] that citation did not seem necessary.

Nonetheless, we are asked to distinguish *Addison* on the ground that there the creditor was attempting to remove the bar of the statute and revive his action on a debt, whereas here he was merely attempting to *extend* the running of the statute. While writings which revive an action on a barred debt must be construed more strictly than those which simply toll the statute, *Cannavina v. Poston,* 13 Wn.2d 182, 194–95, 124 P.2d 787 (1942), in both instances they must be communicated to the creditor or his agent in order to avoid the effect of the statute of limitations. On one hand, where the statute has run, the acknowledgement constitutes a new promise, giving the creditor an opportunity to accept by bringing his action on the new promise. On the other, where the statute has not

---

[5] 51 Am. Jur. 2d *Limitations of Actions* § 354 (1970) states at page 847:

"The modern and prevailing view is that an acknowledgement, to be effectual so far as the removal of the bar is concerned, must be made either to the creditor or to some one authorized to act for him, or, if to a stranger, must have been made with the intention that it be communicated to the creditor. Thus, although there are some earlier cases to the contrary, as a general rule the acknowledgement of a debt made to a stranger, and not intended to be communicated to the creditor, will not remove the bar of the statute." (Footnotes omitted.) 54 C.J.S. *Limitations of Actions* § 319 (1948).

run, the acknowledgement offers an extended period during which the creditor may bring his action. To complete the implied agreement in either, the offer in the form of the acknowledgement must be communicated to the creditor or his agent.[6] Since the financial statements were not communicated to Jack, they did not toll the running of the statute of limitations.

---

[6]In *President & Bd. of Trustees of California College v. Stephens*, 11 Cal. App. 523, 528, 105 P. 614, 616 (1909), the court in considering similar arguments under a similar statute said:

Appellant makes a distinction between an acknowledgment or promise given before the statute has run and one given after it has run, which latter was the case in *Biddel v. Brizzolara*, 64 Cal. 354, [30 Pac. 609], and *Visher v. Wilbur*, 5 Cal. App. 562, [90 Pac. 1065, 91 Pac. 412]. The argument is that as the basis of the action in the latter case is the new contract, there must be a meeting of the minds of the parties; whereas in the former, the basis of the action being the original contract, no subsequent meeting of minds is necessary. "In such case, the purpose of the statute," it is urged, "is to require the solemnity of a written acknowledgment which admits the indebtedness as an existing liability, if the presumption of payment arising from lapse of the statutory period is to be considered by the court as rebutted; but that solemnity and definiteness of evidence is equally obtained whether the acknowledgment is made to the creditor himself or to a third party, and therefore the purpose of the statute is accomplished in the latter case." We fail to recognize any just ground for this distinction so far as concerns the fact of making the promise— either as to the character or nature of the promise or the person to whom made. As said by Mr. Wood: "The distinction between the acknowledgment of a debt before and one after the statute has run consists merely in its effect upon the debt and the remedy." (Wood on Limitations of Actions, sec. 81. See, upon the point, *Southern Pacific Co. v. Prosser*, 122 Cal. 413–416, [52 Pac. 836, 55 Pac. 145].) If this be true, there is as much reason in requiring the acknowledgment to be made to the creditor or some one in privity with him or representing him, in the one case as in the other. It is not alone the solemnity of the acknowledgment that suspends the operation of the statute, but it is that fact coupled with the further fact that it is made under such circumstances as would have the effect either to keep alive the original contract or create a new contract; and it seems to us that the fact should be communicated to the creditor for equally strong reasons in both of the cases suggested by appellant. *Indeed, there is additional reason why the acknowledgment, when made before the statute has run, should be made to the creditor or some one representing him. Presumably the creditor knows when the statute will bar his action. If the debt is acknowledged to him, he may safely assume that the statute begins then to run, that a new period of limitation is agreed upon and the debtor is estopped to deny it. But if not made to him or his representative, and he allows the statute to run, the creditor should be held to the consequences of his neglect to bring his action in time.* Conceding that

To further support his claim that the court erred in not deciding as a matter of law that the action was brought within the applicable limitations period, Jack argues that his evidence established other facts which would have taken the loan agreement out of the statute. In essence, his position is that since his evidence was uncontroverted, the court had no choice but to rule as a matter of law in his favor on the limitations issue. For the same reason, he argues that the court erred in not entering judgment notwithstanding the verdict. We disagree.

■ The evidence of the alleged oral loan agreement could not have been disputed by the deceased brother because he was not alive and could not explain what transactions, if any, occurred between him and his brother.[7] The surviving brother's case depended solely upon the credibility of his witnesses. Jack's contention he should prevail because his evidence was undisputed lacks merit because undisputed evidence from an interested party is not necessarily credible evidence. *In re Estate of Shaner*, 41 Wn.2d 236, 243, 248 P.2d 560 (1952), nor is it necessarily consistent and convincing.

---

this result follows properly where the debtor acknowledges the indebtedness to a stranger after the statute has run, we feel quite satisfied that like consequences should follow where a similar acknowledgment is made before the statute has run.

(Italics ours.) *Accord, Cox v. Monday*, 264 Ky. 805, 95 S.W.2d 785, 787 (1936); *Davis v. Strange*, 156 Ky. 420, 161 S.W. 217 (1913); *Hargis v. Sewell's Adm'r*, 87 Ky. 63, 7 S.W. 557 (1888).

[7] Counsel for the estate considered this a classic case under the deadman's statute, RCW 5.60.030 which provides:

No person offered as a witness shall be excluded from giving evidence by reason of his interest in the event of the action, as a party thereto or otherwise, *but such interest may be shown to affect his credibility: Provided, however,* That in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, or as the guardian or conservator of the estate of any insane person, or of any minor under the age of fourteen years, then a party in interest or to the record, shall not be admitted to testify in his own behalf as to any transaction had by him with, or any statement made to him, or in his presence, by any such deceased or insane person, or by any such minor under the age of fourteen years: *Provided further,* That this exclusion shall not apply to parties of record who sue

Aside from the statute of limitations questions on which the jury could have found in favor of the widow and estate, testimony by Jack and his witnesses could have allowed the jury to conclude there was no loan at all. There was evidence from which they could have found that Jack and Ed were engaged in a profit–sharing arrangement, joint venture, partnership or corporate investment scheme. Thus, the court did not err in submitting the limitations issue to the jury or in failing to grant the motion for judgment notwithstanding the verdict.

Judgment of the Superior Court is affirmed.

MUNSON, C.J., and GREEN, J., concur.

Petition for rehearing denied April 11, 1978.

Review denied by Supreme Court October 6, 1978.

or defend in a representative or fiduciary capacity, and have no other or further interest in the action.

(Italics ours.) In his brief counsel said the estate waived the bar of the statute "because the equivocal and contradictory testimony of the Appellant and his self–serving interest in the action was seen to put appellant's credibility in issue, . . ."