**FILED**
**MAY 29, 2025**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DAVID R. DUNCAN, as Trustee of the John and Grace Arata 2004 Trust, | ) ) ) | No. 40247-9-III |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| LAWRENCE ARATA, Individually and as Successor Trustee of the Gary Jay Arata Trust, or his Successor in Trust; Marie Arata, Individually as to her separate Property and as Personal Representative of the Estate of Gary Jay Arata, Deceased; and Laura Joanne Arata; Also all other persons or parties unknown claiming any right, title, estate, lien or interest in the real estate described in the Complaint herein, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | PUBLISHED OPINION |
| Respondents. | ) | |

LAWRENCE-BERREY, C.J. — David Duncan, trustee of the John and Grace Arata

2004 Trust, creditor, appeals the trial court's summary judgment order dismissing his

mortgage foreclosure action against real property owned by Marie Arata and Lawrence

Arata, as trustee of the Gary Jay Arata Trust (GJA Trust), debtors. The question on

appeal is whether a debtor communicated to the creditor an "acknowledgment" of the

debt so as to restart the statute of limitations. Viewing the evidence in the light most

favorable to Duncan, including all reasonable inferences, we conclude there is a genuine

issue of material fact. We reverse the trial court's summary judgment order and remand

for further proceedings.

## FACTS

John Arata and Grace Arata formed the "Arata 2004 Trust," designating their son Gary Arata (Gary)[1] as trustee if the parents were unable to act as trustee, and their other son Louis Arata (Louis) as alternate trustee if Gary was unable to act.

Gary served as trustee of the Arata 2004 Trust beginning December 5, 2005. On December 6, 2006, Gary misappropriated[2] trust funds to purchase real property in the name of himself and his wife, Marie Arata. In 2007, Gary's misappropriation was later discovered. To make things right, Gary and Marie signed a promissory note for $400,109.19 payable to the Arata 2004 Trust. The note bore interest at five percent per year on the unpaid principal amount, with interest payable annually commencing December 6, 2007, with the full amount of principal due and payable on December 6, 2011. The debt was secured by a mortgage on the real property purchased with the trust's funds.

Gary transferred his interest in the real property by quitclaim deed to Gary Jay Arata, as trustee of the GJA Trust. On March 15, 2016, Gary died. Two days later, the

---

[1] Because seven of the people referred to in the facts have the last name of Arata, after we refer to them by their full names, we shorten later references to their first names.

[2] Because Louis replaced Gary after Gary "borrowed" from the trust a second time, one reasonable inference is that Gary lacked permission to use the money to buy the property.

quitclaim deed was recorded. Lawrence Arata, Gary's son, succeeded Gary as trustee of

the GJA Trust.

On February 25, 2017, Marie, as personal representative of her late husband's

estate, signed and submitted an estate tax return. In the return, Marie listed the principal

balance ($400,109.19) and accrued interest ($123,866.52) owing on the promissory note

as a debt owed to the Arata 2004 Trust.

At the time when Marie signed the tax return, Marie's daughter, Laura Arata, was

a co-trustee with Louis of the Arata 2004 Trust. Laura became the sole trustee of the

Arata 2004 Trust on March 1, 2018.

In December 2020, Stephen Bishop (Bishop) represented Marie in her capacity as

personal representative of her late husband's estate. Peter Kim (Kim) represented

Louis, a beneficiary of the Arata 2004 Trust. Gary Dambacher (Dambacher) represented

Laura in both her individual capacity and as the trustee of the Arata 2004 Trust. On

December 15, 2020, Bishop sent an e-mail to Dambacher and Kim that reads in relevant

part:

> I am the attorney for the personal representative of the estate of Gary J.
> Arata. Marie Arata is the personal representative of the estate. A number
> of years ago, Marie and Gary Arata purchased approximately 311 acres of
> farmland located here in Whitman County. The property is presently
> owned one-half by Marie Arata and one-half by the estate of Gary J. Arata.
> The Aratas financed the purchase of the property with a loan from the John

3

and Grace Arata Trust. This loan is evidenced by a promissory note, secured by a mortgage covering the farmland.

As per Gary Dambacher's request, this is to confirm that, after many discussions with Marie Arata regarding how the obligation owed to the John and Grace Arata Trust can be satisfied, we are going forward to list the property for sale, with the proceeds from the sale to be applied first to payment of the note.

Clerk's Papers (CP) at 95.

On April 7, 2021, David Duncan replaced Laura Arata as trustee of the Arata 2004 Trust. Duncan then obtained the Arata 2004 Trust file from Dambacher and, in the file, was the February 25, 2017 tax return.

*Procedure below*

On February 13, 2023, Duncan commenced this mortgage foreclosure action. The parties conducted limited discovery and then filed cross motions for summary judgment. Marie and the GJA Trust argued that the promissory note was payable in full on December 6, 2011, no payment had been made since 2008, and so the six-year statute of limitations precluded enforcement of the debt. Duncan argued that the February 25, 2017 tax return was an acknowledgement of the debt communicated by the debtor to the creditor that restarted the statute of limitations, and/or the December 15, 2020 e-mail from Bishop to Dambacher and Kim was an acknowledgment of the debt communicated by the debtor to the creditor so as to revive the right to recover the debt.

The trial court ruled in favor of Marie and the GJA Trust, determining there was no evidence that the debtor communicated the debt to the creditor. The trial court dismissed Duncan's foreclosure action and quieted title to the property free from the mortgage. Duncan appeals to this court.

## ANALYSIS

*Standard of Review*

We review summary judgment orders de novo and engage in the same analysis as the trial court. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). We consider the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Rinehold v. Renne*, 198 Wn.2d 81, 96, 492 P.3d 154 (2021). Summary judgment is appropriate only if the sworn pleadings submitted with the motion show there is no genuine issue of any material fact. CR 56(c). A genuine issue of a material fact exists when reasonable minds could differ on the facts that control the outcome of the case. *Dowler v. Clover Park Sch. Dist. No. 400*, 172 Wn.2d 471, 484, 258 P.3d 676 (2011).

*Acknowledgment of Debt*

The statute of limitations to enforce a promissory note is six years. RCW 4.16.040. This and other time bars represent a legislative declaration of public policy that the courts must respect, with rare equitable exceptions. *Bilanko v. Barclay Ct. Owners Ass'n*, 185 Wn.2d 443, 451-52, 375 P.3d 591 (2016).

The policy behind statutes of limitations is to protect defendants from the "burdens of litigating stale claims by requiring prospective plaintiffs to assert their claims before relevant evidence is lost." *Fowler v. Guerin*, 200 Wn.2d 110, 118-19, 515 P.3d 502 (2022). It is not surprising then, that when a debtor acknowledges the debt in writing to a creditor, the period of time to recover is restarted.

This principle is legislatively recognized in the following statute:

> **New promise must be in writing.** No acknowledgment or promise shall be sufficient evidence of a new or continuing contract whereby to take the case out of the operation of this chapter, unless it is contained in some writing signed by the party to be charged thereby; except, an acknowledgment or promise made after the limitation period has expired shall not restart, revive, or extend the limitation period.

RCW 4.16.280 (LAWS OF 2019, ch. 377, § 2, effective July 28, 2019).

To constitute an "acknowledgement," the writing must be communicated to the creditor or his agent. *Rea v. Rea*, 19 Wn. App. 496, 499, 576 P.2d 84 (1978). The communication need not include an express promise to pay. *Griffin v. Lear*, 123 Wash. 191, 199, 212 P. 271 (1923). Instead, "[i]f one in writing acknowledges he owes a debt, the law will presume that he intends to pay it, unless there is something in the writing which shows a contrary intention." *Id.* "'It is not necessary that both an admission of the debt and a new promise to pay shall be made and signed by the party; but either is

6

sufficient.'"  *Id.* (quoting H.G. WOOD, A TREATISE ON THE LIMITATION OF ACTIONS AT LAW AND IN EQUITY § 81b, at 436 (4th ed. 1916)).

The court in *Rea* further described what constitutes an effective communication:

> "The modern and prevailing view is that an acknowledgment, to be effectual so far as the removal of the bar is concerned, must be made either to the creditor or to some one [sic] authorized to act for him, or, if to a stranger, must have been made with the intention that it be communicated to the creditor.  Thus, although there are some earlier cases to the contrary, as a general rule the acknowledgment of a debt made to a stranger, and not intended to be communicated to the creditor, will not remove the bar of the statute."

*Rea*, 19 Wn. App. at 499 n.5 (quoting 51 AM. JUR. 2D *Limitations of Actions* § 354, at 847 (1970)).

With these principles in mind, we analyze whether the record viewed in the light most favorable to Duncan, including all reasonable inferences, supports his argument that the February 25, 2017 tax return listing of the debt is an acknowledgment sufficient to restart the six-year limitations period.

The February 25, 2017 tax return signed by Marie, as personal representative of her late husband's estate, is a writing signed by the debtor[3] that the debt is unpaid.  There is nothing in the writing that shows an intent *not* to pay.  The only question then is

---

[3] The mortgage secured payment of the promissory note.  The debtors on the note were Gary and Marie.  Even if *one* debtor acknowledged the debt, the full debt would be owed, and thus the property would be encumbered by the full debt.

7

whether the writing was communicated from the debtor to the creditor. For the reasons that follow, the fact that the February 25, 2017 tax return was in the Arata 2004 Trust file allows a trier of fact to reasonably infer that the return was communicated from the debtor to the creditor.

Someone must have provided the tax return to attorney Dambacher for it to be in the Arata 2004 Trust (creditor) file. Had Dambacher received it from a nonclient, one would think that a cover letter enclosing, or an e-mail attaching, the tax return would have been found in the file. The fact that no such document was found could lead a reasonable trier of fact to find that the tax return was given to Dambacher by his client, Laura, who for all material times had been either the co-trustee or the sole trustee of the Arata 2004 Trust. Thus, the tax return could have been given to the creditor (Laura as co-trustee or sole trustee), but by whom?

Three entities had control over the original tax return or signed copies—Marie, her late husband's estate attorney, and the tax return's recipient (the State of Washington). Laura denies she was ever a co-personal representative of her father's estate. So, there is little reason to believe she received the tax return from the estate's lawyer, and no reason to believe she received it from the State of Washington. A reasonable trier of fact, therefore, could find that Marie, either in her personal capacity (co-debtor) or as personal

representative of her late husband's estate (the other co-debtor), gave the letter to Laura (co-trustee or sole trustee of the creditor), who then gave it to Dambacher.

Marie and the GJA Trust argue that Laura filed a declaration denying that she had ever seen the February 2017 tax return or that she provided a copy of it to Dambacher. They argue that this denial requires one to find that the tax return was *not* given to Laura, a representative of the creditor, and therefore the statute of limitations was not renewed. We disagree. Laura may be biased. If the large debt was renewed in February 2017, her mother Marie and the beneficiaries of the GJA Trust will have a significant encumbrance on the subject property. A jury might reasonably disbelieve Laura's self-serving denial. When, on summary judgment, a "fact" is particularly within the knowledge of the moving party and where this "fact" might reasonably be disbelieved by a jury, the matter should proceed to a trial to permit the nonmoving party to impeach the witness directly through cross-examination or indirectly through inferences drawn from other evidence. *Acosta v. City of Mabton*, 2 Wn. App. 2d 131, 138, 408 P.3d 1095 (2018). Here, as explained above, there are reasonable inferences that Marie gave Laura the February 25, 2017 tax return.

We conclude that a genuine issue of material fact exists as to whether the statute of limitations was restarted on or after February 25, 2017, by the tax return being given by the debtor to the creditor. And, because Duncan commenced this foreclosure action

9

No. 40247-9-III
*Duncan v. Arata*

within six years of that date, the trial court erred in dismissing it and quieting title in

Marie and the GJA Trust free of the mortgage.[4]

Reversed and remanded.

Lawrence-Berrey, C.J.

WE CONCUR:

Staab, J.

Cooney, J.

---

[4] We need not analyze the effect of the December 15, 2020 e-mail from Bishop to Dambacher and Kim. This is because the 2019 amendment to RCW 4.16.280 changed the law so that an acknowledgment *after* the statute of limitations has run no longer can revive a barred debt.

Relatedly, the six-year statute of limitations originally would have run on December 6, 2017, so Duncan must establish that the February 2017 tax return was given by Marie to Laura before that time.